2015 VT 69

# The Stratton Corporation and Intrawest Stratton Development Corporation v. Engelberth Construction, Inc. v. Evergreen Roofing, LLC

[123 A.3d 393]

No. 13-336

Present: **Reiber, C.J., Dooley and Skoglund, JJ., and Maley and Griffin, Supr. JJ., Specially Assigned**

Opinion Filed May 1, 2015

*Shapleigh Smith, Jr., William Andrew MacIlwaine* and *Sophie E. Zdatny* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Third-Party Plaintiff-Appellee.

*Richard W. Affolter, Michael J. Gannon* and *Sara Moran* of *Affolter Gannon & Rose, Ltd.*, Essex Junction, for Third-Party Defendant-Appellant.

¶ 1. **Skoglund, J.** This case stems from a condominium construction project in Stratton, Vermont. Owner and developer, Stratton Corporation and Intrawest Stratton Development Corporation (collectively "developer"), sued the project's general contractor Engelberth Construction, Inc., who in turn filed a third-party claim against subcontractor Evergreen Roofing Company. A jury found that Engelberth Construction breached its contract

with developer and breached an express warranty, which proximately caused developer to sustain damages related to roof repairs. The jury also found that Evergreen Roofing breached its subcontract with Engelberth Construction, and that Evergreen Roofing was obligated to indemnify Engelberth Construction. Evergreen Roofing appeals. It argues that the court erred in denying a pretrial motion for summary judgment filed by Engelberth Construction on various issues, including the scope of the contract between developer and Engelberth Construction and whether proof of noninsurance or lack of availability of insurance coverage was a prerequisite to developer's recovery against Engelberth. We conclude that Evergreen Roofing failed to preserve its argument, and we therefore affirm.

¶ 2. The record indicates the following. In April 2000, developer and Engelberth Construction entered into a standard agreement outlining the scope and terms of a condominium construction project. The agreement gave developer the option of implementing a Consolidated Insurance Program (CIP), which developer did. Article 11A of the agreement, entitled "Insurance, Bonds and Indemnification," outlined developer's responsibilities, as well as those of Engelberth Construction and any subcontractors, given the implementation of the CIP. Article 11A contained the following provisions related to the CIP; the term "owner" refers to developer:

> 11.1.2 *CIP Coverage* — Owner may implement a CIP to furnish certain insurance coverages as respects on-site activities. The CIP will be for the benefit of the owner, Contractor and Subcontractors of any tier (unless specifically excluded) who have on-site employees. Such coverage applies only to work performed under the Contract Documents at the Project site and the Contractor and all Subcontractors of any tier must provide their own insurance for off-site activities. Contractor and all Subcontractors of any tier will also be responsible for providing the coverages specified in Subparagraph 11.1.8. The CIP is not intended to cover consultants, suppliers, vendors, or materials dealers or others whose function is *solely* to supply and/or deliver materials, parts, or equipment to and from the site. The CIP is intended to cover these individuals if they remain on site (after delivery) in

an advisory capacity regarding installation or use of the materials, parts or equipment delivered.

In the event it implements CIP, Owner may procure and maintain [other] types of insurance in force as part of the CIP for the Contractor and Subcontractors of any tier (unless specifically excluded). `

The agreement then listed several other types of insurance, including workers' compensation and employer's liability insurance, commercial general liability insurance, and excess liability insurance, that developer could choose to implement as part of the CIP.

¶ 3. The agreement had the following separate provisions regarding builder's risk insurance:

11.3 BUILDER'S RISK INSURANCE
Owner shall procure, pay for, and maintain all-risk builder's risk insurance as follows:

11.3.1 *Required Insurance* — Owner shall carry all-risk builder's risk insurance . . . for the full insurable value of all labor and materials incorporated into the construction of the Work, while at the construction site or staging area awaiting erection and during erection, until completion and acceptance. Insurance is to cover real and personal property after it is received at the construction site or staging area . . . . The policy so purchased shall insure Owner, the Contractor and Subcontractors as their interests may appear and shall be so written as to provide for reimbursement, in the event of claim for loss or damage, for the entire cost . . . of repairing or replacing, reconditioning, or reerecting the property lost or damaged with materials of similar kind and quality, including, but not by way of limitation, the cost of materials, labor, supervision, engineering, transportation, insurance premium and taxes.

¶ 4. The agreement also contained the following specific provisions related to indemnification:

11.5 INDEMNIFICATION

11.5.1 *Indemnity* — To the fullest extent permitted by law, Contractor shall indemnify, defend and hold harmless Owner, Owner's partners, the parent companies and

affiliates of Owner and of any of Owners partners, Architect and the directors, officers, shareholders, employees and agents of any of the above mentioned parties (the "Indemnified Parties") from and against any and all loss, cost, expense, damage, injury, liability, claim, demand, penalty or cause of action (including Attorney's fees and disbursements), directly or indirectly arising out of, resulting from or related to (in whole or in part), the performance of the Work to the extent that (a) the same results from the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and (b) the same are not covered by insurance the Owner is required to maintain under Paragraph 11.3 or otherwise maintains. The Contractor shall not be obligated to indemnify any Indemnified Party for that portion of any loss, cost, expense, damage, injury, liability, claim, penalty or cause of action attributable to the negligence of the Indemnified Party or its employees.

¶ 5. Engelberth Construction and Evergreen Roofing subsequently entered into a subcontract covering roofing work on the project. The subcontract provided that Evergreen Roofing "shall indemnify, defend and hold harmless" developer and Engelberth Construction "from and against claims, damages, losses and expenses, including attorney's fees, interest, penalties, and fines, arising out of or resulting from performance or nonperformance" of Evergreen Roofing's work, "provided that any such claim, damage, loss or expense is alleged to be caused in whole or in part, by the acts or omissions of [Evergreen Roofing] . . . but only to the extent caused by" Evergreen Roofing.

¶ 6. The project was substantially completed in June 2002. In 2003, the condominium association threatened to sue developer over numerous issues, including certain alleged construction defects in the roofing. The parties to that dispute reached a settlement agreement in June 2005. That same month, developer filed this suit against Engelberth Construction, raising claims of negligence, breach of contract, and breach of warranty.[*] Developer alleged that Engelberth Construction was responsible for defects in the construction of roofing and roofing systems of many units,

---

[*] Developer did not pursue its negligence claim at trial.

causing water damage, and for inferior, incomplete, and unworkmanlike construction in many aspects of the project. Engelberth Construction then filed a third-party claim against Evergreen Roofing on breach of contract and negligence grounds and specifically on the basis of the indemnification provision of its contract with Evergreen Roofing.

¶ 7. In November 2011, almost a year before trial, Engelberth Construction moved for summary judgment. It argued, among other things, that developer's claims were not ripe for decision because Article 11A of the parties' agreement expressly required that, before Engelberth Construction could be required to indemnify developer, such claims must be shown not to be covered by insurance maintained by developer. At a hearing, Evergreen Roofing orally indicated its support for the motion.

¶ 8. The court denied the motion. It recounted many of the facts above: it noted that the CIP that developer purchased was intended to cover losses on the project arising from the activities of enrolled participants, and that Engelberth was enrolled in developer's CIP. The court found that the question of whether this policy was intended to provide builder's risk insurance was a contested issue and noted there was a declaratory-judgment action related to the CIP coverage currently pending in federal district court.

¶ 9. Evergreen Roofing suggests that this issue was revisited at trial. It states that, on the day before trial, Engelberth Construction sought to amend its answer to state additional defenses based on developer's alleged bad faith during settlement negotiations. The court considered this request in conjunction with developer's motion to exclude evidence concerning CIP insurance. The court denied the motion to amend on the record, finding that it would be very prejudicial to allow Engelberth Construction to bring in new defenses at such a late date. Evergreen Roofing did not file anything with the court to indicate its support of Engelberth Construction's motion to amend. The court explained that additional discovery and depositions of new witnesses would be necessary; the new defenses would require the jury to hear about settlement negotiations between the parties; and the argument advanced by Engelberth Construction seemed weak.

¶ 10. As to developer's request to exclude evidence related to the CIP issue, the court stated that it could not see how such evidence could come in. Developer maintained that the indemnity

provision in the contract related to its negligence claim. Developer explained that it no longer intended to pursue its negligence claim against Engelberth Construction, relying instead on its breach-of-contract and breach-of-warranty claims. In light of this, counsel for Engelberth Construction stated that it did not oppose the motion to exclude evidence concerning CIP insurance.

¶ 11. Evergreen Roofing also asserts that Engelberth Construction submitted requests to instruct the jury based on breaches of the indemnity clause in its agreement with developer. Engelberth Construction responds that while it did propose jury instructions on good faith and promissory estoppel, these instructions were not adopted by the court, and no party objected.

¶ 12. Following trial, the jury found Engelberth Construction liable to developer for breach of contract and breach of express warranty, and found that Evergreen Roofing must indemnify Engelberth Construction. As stated by Evergreen Roofing, the legal effect of Article 11A in the underlying contract "was left undetermined in submitting the case to the jury. The jury was simply charged to enforce the contract with no reference to the meaning of the 'disputed' indemnity language." Evergreen Roofing appeals from the judgment.

¶ 13. In its brief, Evergreen Roofing argues that Article 11A should have barred developer from presenting its claims to the jury. It maintains that it has raised this argument "throughout this case." It points to Engelberth's motion for summary judgment; Engelberth's motion to amend and the court's discussion of this issue; and Engelberth's proposed jury instructions. According to Evergreen Roofing, the trial court's failure to either interpret Article 11A as a matter of law or to interpret the CIP policies submitted with the motion for summary judgment "left a void in the evidence." It asks this Court, among other things, to reverse the pretrial summary-judgment decision and stay the execution and interest on the underlying judgment until such time as there is a determination as to CIP coverage.

¶ 14. ■ ■ We agree with Engelberth Construction that the issues raised by Evergreen Roofing are not properly before us. First, a party generally cannot appeal from the pretrial denial of a motion for summary judgment. This is because "[o]nce trial begins, summary judgment motions effectively become moot," *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396-97 (5th Cir. 1995),

and the trial court's "judgment on the verdict after a full trial on the merits . . . supersedes the earlier summary judgment proceedings." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 199 (2d Cir. 2004) (quotation omitted). Evergreen Roofing provides no legal authority to support any exception to this general rule.

¶ 15. ▮ Evergreen Roofing similarly did not raise this issue at trial. As detailed above, it did not join in Engelberth Construction's motion to amend its answer; it did not object to the exclusion of CIP evidence; it did not object to the jury instructions; and it did not move for judgment as a matter of law. Evergreen Roofing's failure to properly raise the CIP issue at trial precludes our review of this issue on appeal. See *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230 ("[I]ssues not raised at trial are unpreserved, and this Court will not review them on appeal.").

*Affirmed.*