NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal
revision before publication in the Vermont Reports. Readers are requested to notify the Reporter
of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109
State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made
before this opinion goes to press.

 2019 VT 82

 No. 2019-103

The Lofts Essex, LLC, and The Wilson Inn, Inc. Supreme Court

 On Appeal from
 v. Superior Court, Chittenden Unit,
 Civil Division

Strategis Floor and Décor Inc. September Term, 2019

Robert A. Mello, J. (summary judgment); Helen M. Toor, J. (final judgment)

Adam P. Bergeron of Bergeron, Paradis & Fitzpatrick, LLP, Essex Junction, for
 Plaintiffs-Appellants.

Marc Heath and William T. Clark, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.),
 Specially Assigned

 ¶ 1. CARROLL, J. Plaintiffs, Lofts Essex, LLC and the Wilson Inn, Inc. (collectively

the Lofts),1 appeal the trial court’s pretrial denial of summary judgment and the court’s final

decision ruling in favor of defendant, Strategis Floor and Décor, Inc. We conclude that the trial

court’s pretrial denial of summary judgment is not reviewable and affirm the final decision

granting judgment to Strategis.

 1
 The Wilson Inn is owned by Roger Villemaire and the Wilson Inn is the “single member
of the Lofts Essex [LLC].” The Lofts Essex, LLC added the Wilson Inn as a plaintiff to avoid any
confusion.
 I. Facts

 ¶ 2. The evidence viewed in the light most favorable to Strategis indicates the

following.2 In 2013, the Lofts built a fifty-four-unit upscale apartment building in Essex, Vermont.

During the construction of the building, Roger Villemaire—the Lofts owner—and Joseph

Villemaire—the Lofts property manager—approached Crowley Floors, a local Vermont flooring

retailer, about purchasing flooring for the Lofts. Crowley Floors provided the Villemaires with a

marketing brochure for a Strategis flooring product called “Inspira High Performance Luxury

Vinyl Plank” (LVP), which described LVP as a “[s]pectacular, lifelike wood” product with a

“ ‘[t]ough-as-nails’ finish.”

 ¶ 3. LVP is a laminate wood product “designed to look like real wood flooring, but to

be more durable.” LVP consists of six layers. The top layer is a “[s]cratch [r]esistant [c]oating”

designed “primarily . . . to give the product a uniform gloss level and an enhanced resistance to

minor abrasions.” Immediately beneath the scratch resistant coating is an additional 0.5 millimeter

wear layer that “gives the floor . . . its long-term resistance to abrasion and day-to-day wear and

tear.” The next layer down is the “printed decor layer,” which is a synthetic film designed to

replicate the look of real wood. Beneath the printed decor layer is a high-density vinyl that makes

up the product’s core. The final bottom layer consists of polyvinyl chloride (PVC), which is a

vinyl-based plastic “used extensively in plastic pipe, plastic wrap, electrical insulation, [and]

carpeting.” See J. Luddington, Annotation, Products Liability: Polyvinyl Chloride, 59 A.L.R.4th

129, § 2(a) (1988).3

 2
 Because we conclude that the trial court’s pretrial denial of summary judgment is
unreviewable, see infra, ¶¶ 11-14, we view the trial court’s factual findings in the light most
favorable to Strategis. See Finley v. Williams, 142 Vt. 153, 155, 453 A.2d 85, 86 (1982)
(“[F]indings of fact . . . by the trial court will not be disturbed on appeal unless clearly erroneous
when viewed in the light most favorable to the prevailing party.”).
 3
 We take judicial notice of the definition of PVC. See V.R.E. 201(b).
 2
 ¶ 4. The Villemaires decided to purchase approximately 30,000 square feet of LVP

flooring from Crowley Floors to install in “the entries, kitchens, dining areas and hall closets of

the 54 apartment units.”4 About a year after the LVP flooring was installed, Joseph Villemaire

began noticing problems: the floor was separating and small blue spots were appearing in the

flooring. In the summer of 2015, the Lofts contacted Sean Ryan—the owner of Elegant Floors,

another local flooring retailer—for assistance in dealing with these problems.5

 ¶ 5. On behalf of the Lofts, Mr. Ryan filed a warranty claim with NRF distributors, the

regional distributor for Strategis’ LVP product. On August 10, 2015, John Kimball, NRF’s Claim

Manager, forwarded the Lofts’ warranty claim to Strategis’ vice president, William Friend. Mr.

Kimball also arranged for Richard Reed, a professional flooring inspector, to inspect the LVP

flooring at the Lofts. On August 25, 2015, Mr. Reed inspected one unit at the Lofts and noticed

“a number” of spots in the kitchen and dining room. During this inspection, Mr. Reed cut open a

few pieces of LVP flooring with the spots, “peeled back the wear layer,” and found a dense

“powdery substance” underneath the wear layer that he scraped out.

 ¶ 6. In March 2016, Mark Reagan, Strategis’ flooring expert, inspected eighteen to

twenty apartments at the Lofts. Mr. Reagan thereafter issued a report in which he concluded that

the cause of dots was unknown. In June 2016, Mr. Reed returned to the Lofts and inspected around

ten units. Each apartment had from thirty to fifty spots randomly placed in the floor in no

observable pattern. Following Mr. Reed’s second inspection, he filed a report in which he

concluded that “the discoloration and the material under the wear layer was foreign matter. And

anything that’s foreign matter . . . is a manufacturing-related issue.”

 4
 The parties dispute the exact amount of flooring the Lofts purchased, but this fact has
no relevance to our decision.
 5
 At that point, Crowley Floors had gone out of business.
 3
 ¶ 7. On June 27, 2016, the Lofts filed its initial complaint, alleging claims of breach of

express and implied warranties, violation of the Vermont Consumer Protection Act (VCPA), and

negligent misrepresentation.6 On July 14, 2017, the Lofts filed a motion for partial summary

judgment on the express warranty claim. The Lofts contended it was entitled to summary judgment

because it demonstrated that the LVP “failed to conform to [its] express warranty.” Strategis

argued, however, that the Lofts was also required to prove the blue spots were “caused by a product

defect and that the defect existed in the product at the time it left Strategis’ possession and control.”

After an extensive discussion of the relevant case law, the court concluded that “the burden

remain[ed] on [t]he Lofts to prove that” the blue spots were caused by a manufacturing defect.

Applying this standard, the trial court denied the Lofts’ motion for summary judgment because,

although the Lofts had produced “compelling evidence that the [spots] must be due to a

manufacturing issue,” “Strategis ha[d] come forward with sufficient evidence to create a genuine

dispute as [their] cause.”

 ¶ 8. On February 5, 2019, the trial court held a bench trial and heard testimony from

several witnesses, including: Richard Reed, William Friend, and Mark Reagan. On February 11,

2019, the court entered judgment for Strategis. On the breach-of-warranty claims, the court

assumed, without deciding, that Strategis had the burden of demonstrating the blue spots were not

the result of a manufacturing defect. The court nevertheless concluded that Strategis had met its

burden by producing enough evidence to demonstrate that it was “more likely than not that the

spots on the flooring occurred after manufacturing.” Finally, the court held that Strategis could

not be liable under the VCPA because “there [was] no evidence that Strategis knew or should have

known of the problem.”

 6
 The Lofts subsequently twice amended its complaint. On October 28, 2016, the Lofts
added the Wilson Inn as a plaintiff. Then, on November 9, 2018, the Lofts removed its allegations
relating to the separation occurring between the flooring planks.
 4
 ¶ 9. On appeal, the Lofts argues that the trial court incorrectly allocated the burden of

proof in its summary judgment decision. The Lofts contends that according to Alpert v. Thomas,

643 F. Supp. 1406 (D. Vt. 1986), it properly revoked its acceptance of the LVP flooring and,

therefore, Strategis had the burden of demonstrating that the spots were not the result of a

manufacturing defect. According to the Lofts, if the trial court had correctly followed Alpert,

“summary judgment [w]ould have been granted to [the Lofts] on the basis of the summary

judgment record.” The Lofts also contends that the trial court improperly weighed the evidence

in its merits decision by relying on conjecture and speculation and disregarding the uncontradicted

testimony of the Lofts’ expert witness. In addition, the Lofts argues that the trial court improperly

precluded its fact witness from giving opinion testimony during the bench trial. Finally, the Lofts

argues that the trial court erred in requiring an element of knowledge in the VCPA claim.

 ¶ 10. We conclude that the trial court’s denial of summary judgment is not reviewable

because it was decided on sufficiency-of-the-evidence—not legal—grounds. On the merits, we

conclude that the trial court’s weighing of the evidence was not clearly erroneous, and that the

court did not err by precluding the Lofts’ fact witness from giving opinion testimony. Finally,

based on a different legal justification, we affirm the trial court’s ruling on the VCPA claim.7

 II. Summary Judgment

 ¶ 11. The Lofts argues that the trial court erred in denying its pretrial motion for summary

judgment. A threshold issue, however, is whether this Court can review a pretrial denial of

 7
 The Lofts brought four claims against Strategis: (1) breach of express warranty,
(2) breach of implied warranty, (3) violations of the VCPA, and (4) negligent misrepresentation.
The trial court explained in its merits decision that “[a]ll the claims turn on whether [Strategis] is
responsible for the spots.” Although the trial court expressly ruled for Strategis on the breach of
express warranty, breach of implied warranty, and the VCPA claims, it did not directly decide the
negligent misrepresentation claim. Because the Lofts does not address the negligent
misrepresentation claim on appeal, we do not address it. See Lamell Lumber Corp. v. Newstress
Int’l, Inc., 2007 VT 83, ¶ 11, 182 Vt. 282, 938 A.2d 1215 (holding that claims not raised on appeal
are waived).
 5
summary judgment. “[A] party generally cannot appeal from the pretrial denial of a motion for

summary judgment.” Stratton Corp. v. Engelberth Constr., Inc., 2015 VT 69, ¶ 14, 199 Vt. 289,

123 A.3d 393 (emphasis added). “Once trial begins, summary judgment motions effectively

become moot, and the trial court’s judgment on the verdict after a full trial on the merits supersedes

the earlier summary judgment proceedings.” Id. (alterations and quotation omitted).

 ¶ 12. As is often the case, however, there is an exception to this general rule. In Rekhi

v. Wildwood Industries, Chief Judge Posner explained that “the principle that an order denying

summary judgment is rendered moot by trial and subsequent judgment on the merits is intended

for cases in which the basis for the denial was that the party opposing the motion had presented

enough evidence to go to trial.” 61 F.3d 1313, 1318 (7th Cir. 1995); see also id. (“If the judge

should have granted summary judgment for the [other party based on the record at the summary

judgment stage] but did not, and the [other party] went on to present at trial enough evidence to

show he [was] entitled to win his suit after all, this shows that the grant of summary judgment

would have worked a substantive injustice.”). Questions of law, however, do not pose the same

problem because the moving party at the summary judgement stage could still win on a legal issue

after trial “no matter how much evidence” is presented during trial. Id. (“Res judicata, like most

defenses . . . remains available as a defense even when the plaintiff, having survived summary

judgment, goes on to win a judgment on the merits.”). As the Second Circuit has explained:

 A critical distinction exists between summary judgment motions
 raising the sufficiency of the evidence to create a fact question for
 the jury and those raising a question of law that the court must
 decide. Where a motion for summary judgment based on an issue
 of law is denied, appellate review of the motion is proper even if the
 case proceeds to trial . . . .

Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004).

 ¶ 13. Here, as the Second Circuit explained in Rothstein, reviewability depends on

whether the trial court’s pretrial denial of summary judgment was based on the sufficiency of the
 6
evidence or on a question of law. The trial court framed the issue on summary judgment as

“whether the evidence proffered by Strategis is sufficient to create a dispute of material fact as to

the cause of the discoloration” and then concluded that “Strategis ha[d] come forward with

sufficient evidence to create a genuine dispute.” Because the trial court’s denial of summary

judgment was based on the sufficiency of the evidence, it is not subject to appellate review after a

trial on the merits.

 ¶ 14. Furthermore, the general principle that “once trial begins, summary judgment

motions effectively become moot,” Stratton Corp., 2015 VT 69, ¶ 14 (alteration and quotation

omitted), is especially true in this case. At trial, the trial court assumed, without deciding, that

Strategis had the burden of proof on the warranty claim. Any legal error the trial court committed

on summary judgment, by requiring the Lofts to demonstrate the blue spots were the result of a

manufacturing defect, is therefore moot. To summarize, the Lofts asks this Court to review a

pretrial denial of summary judgment which is founded on the sufficiency of the evidence to correct

an alleged legal error that was resolved in their favor in the merits decision.8 For the reasons

articulated above, we decline to do so.

 III. Decision After Trial

 ¶ 15. The Lofts also argues that the trial court made several evidentiary errors in its final

decision—namely that the trial court improperly (1) weighed the evidence by relying on conjecture

and speculation to reach its conclusion that the blue spots were not the result of a manufacturing

defect, (2) disregarded uncontradicted expert testimony, and (3) prevented a fact witness from

testifying. As explained below, these arguments are without merit.

 8
 We need not decide which party had the burden of proof on the warranty claim.
 7
 A. Weight of the Evidence

 ¶ 16. The Lofts first argues that trial court erred by relying on conjecture and speculation

to conclude that the blue spots were not the result of a manufacturing defect. It specifically points

to the following section of the trial court’s merits decision where the court explained its conclusion

that the spots could not be the result of a manufacturing defect:

 While it is possible that some customers have found the blue-green
 spots but never reported that, it is extremely unlikely that none of
 the customers purchasing the other 50,000 to 70,000 square feet of
 the production run . . . would complain. Residential customers
 typically use about 500 square feet, so there would likely have been
 numerous other locations where this same batch of product was
 installed.

(Emphasis added.) This conclusion is not supported by the factual findings, the Lofts argues,

because “there was no evidence in the record about whether or not the spots ‘appeared in more

locations than just this building.’ ” The Lofts argues that the only “possible support” for this

conclusion is the testimony of Mr. Friend, who handles warranty claims for Strategis, but “[t]here

was no evidence about the frequency and volume of warranty claims handled by Mr. Friend and

whether complaints with the product c[ould] be resolved through different means not involving

the manufacturer’s corporate office.”

 ¶ 17. This Court’s “review of a trial court’s findings . . . following a bench trial is

limited.” Kwon v. Edson, 2019 VT 59, ¶ 23, __ Vt. ___, ___ A.3d ___. A trial court’s factual

findings “will not be disturbed on appeal unless clearly erroneous when viewed in the light most

favorable to the prevailing party.” Finley, 142 Vt. at 155, 453 A.3d at 86. “A finding will not be

disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show

there is no credible evidence to support the finding.” Highgate Assocs., Ltd. v. Merryfield, 157

Vt. 313, 315, 597 A.2d 1280, 1281 (1991). This Court gives “[d]ue regard to the opportunity of

the trial court to judge . . . the credibility of the witnesses,” V.R.C.P. 52(a)(2), and will accordingly

 8
defer to the court’s determinations regarding “the credibility of witnesses and . . . the persuasive

effect of the evidence,” Bruntaeger v. Zeller, 147 Vt. 247, 252, 515 A.2d 123, 126 (1986). Finally,

a trial court’s conclusions will be affirmed “where they are reasonably drawn from the evidence

presented.” TransCanada Hydro Ne., Inc., v. Town of Rockingham, 2016 VT 100, ¶ 27, 203 Vt.

289, 154 A.3d 486.

 ¶ 18. Here, consistent with the standards outlined above, we do not directly resolve the

factual question of whether the blue spots were the result of a manufacturing defect. Rather, on

appeal, the legal issue before us is whether the trial court’s conclusion that the blue spots were not

the result of a manufacturing defect is adequately supported by its factual findings and whether its

factual findings are adequately supported by the record. See Falconer v. Cameron, 151 Vt. 530,

532, 561 A.2d 1357, 1358 (1989) (“This Court’s duty . . . is not to relitigate the factual issues but

to affirm judgments supported by the evidence . . . .”). Contrary to the Lofts’ suggestion that the

court relied on conjecture and speculation and evidence not contained in the record, the trial court

drew permissible conclusions from its factual findings.

 ¶ 19. The trial court made one conclusion: The blue spots could not be the result of a

manufacturing defect because “the uncontested evidence is that Strategis has never had a similar

complaint in all the years it has been producing LVP.” The trial court made several findings of

fact, adequately supported by the record, that directly support this conclusion. The trial court

found that Mr. Friend handles “all” of Strategis’ warranty claims and had “never seen a claim for

a similar issue in the thirteen years he has worked there.” The trial court also found that Mr. Friend

contacted the factory in China where LVP is manufactured and the factory reported that they had

“never seen a similar problem.” The trial court then found that both flooring experts—Mr. Reed

and Mr. Reagan—had also never seen a similar problem “despite doing inspections for many

years.” These findings—adequately supported by Mr. Friend’s, Mr. Reed’s, and Mr. Reagan’s

 9
testimony—directly support the trial court’s conclusion that the blue spots could not be the result

of a manufacturing defect.

 ¶ 20. The trial court also drew a permissible inference from uncontested factual findings

to further explain why the blue spots could not be the result of a manufacturing defect. The trial

court found that a “production run [of LVP] is 80,000 to 100,000 planks” and a residential

customer uses about 500 square feet of LVP flooring. The court then performed basic

mathematics: Because the Lofts only used “roughly” 30,000 square feet of LVP flooring, other

customers would have purchased the remaining 50,000 to 70,000 square feet of the production run.

Based on the court’s calculations, the remaining LVP product went to between 100 and 140

customers. Yet, the trial court found that neither Mr. Friend, Mr. Reed, nor Mr. Reagan had “ever

seen a similar problem.” From these findings, it was permissible for the trial court to conclude

that it it “extremely unlikely” the blue spots were the result of a manufacturing defect because the

“numerous other locations where this same batch of product was installed” did not experience the

problem.

 ¶ 21. Because the trial court drew permissible inferences in making its factual findings,

and its factual findings are adequately supported by the record, we affirm the court’s ruling that

the blue spots were not the result of a manufacturing defect.

 B. Expert Testimony

 ¶ 22. The Lofts also argues that the trial court erred by disregarding uncontradicted

expert testimony. It claims that the “trial court gave no explanation for disregarding [its expert]

Mr. Reed’s uncontradicted expert testimony . . . that the cause of the spots in the flooring resulted

from the manufacturing process.” In addition, the Lofts argues that “Mr. Reed’s opinion [was]

bolstered by the fact that [Strategis] retained a similarly qualified expert witness” who could not

explain what caused the spots.

 10
 ¶ 23. As the trier of fact, “it is the province of the trial court to determine the credibility

of the witnesses and weigh the persuasiveness of the evidence.” Obolensky v. Trombley, 2015

VT 34, ¶ 27, 198 Vt. 401, 115 A.3d 1016 (quotation omitted). Accordingly, “[a] court is not

required to credit an expert witness’s opinion whenever the witness is qualified to testify as an

expert.” State v. Sullivan, 2018 VT 112, ¶ 18, ___ Vt. ___, 200 A.3d 670. Although the court

must “consider qualified expert testimony that is offered,” the “discretion to credit the evidence

lies with the factfinder.” Id.; see also In re T.C., 2007 VT 115, ¶ 26, 182 Vt. 467, 940 A.2d 706

(“The factfinder is best situated to weigh evidence, and therefore, is entitled to weigh the testimony

of the two experts, consider their respective expertise and give whatever weight it believes proper

to the testimony of the witnesses presented.”). Given the court’s discretion in weighing expert

testimony, we review the trial court’s decision for an abuse of discretion. Sullivan, 2018 VT 112,

¶ 18.

 ¶ 24. In this case, two expert witnesses testified during the bench trial: Richard Reed and

Mark Reagan. First, Mr. Reed testified that when he was inspecting apartments at the Lofts on

August 25, 2015, he “cut open” a few pieces of the LVP flooring with the blue spots, “peeled back

the wear layer,” and found “a dense, powdery” substance. From these observations, Mr. Reed

determined that the spots were under the wear layer and in the “printed décor layer.” Mr. Reed

concluded that the blue spots were a manufacturing issue because “the discoloration and the

material under the wear layer was foreign matter. And anything that’s foreign matter is—is a

manufacturing-related issue.” During Mr. Reed’s testimony, the court asked the Lofts’ counsel if

Mr. Reed was going to “talk[] about the chemical explanation” for the discoloration, and counsel

responded that Mr. Reed would not. Mr. Reagan, Strategis’ expert witness, then testified that the

cause of the spots was “unknown.” Mr. Regan explained that he had never seen this problem

before and it was unique to this location.

 11
 ¶ 25. The trial court’s findings of fact demonstrate that it appropriately considered and

weighed the experts’ testimony. The trial court acknowledged that “[t]wo professional flooring

inspectors . . . tried to determine the cause of the spots.” Summarizing their testimony, the trial

court explained that one expert concluded the spots were the result of a manufacturing defect, but

the other concluded their cause was “unknown.” The court then explained why it was not crediting

either testimony: “[N]either inspector did any sort of chemical testing to try to analyze the actual

composition of the spots.” Because the Court considered Mr. Reed and Mr. Reagan’s testimony

and explained why it was not crediting either, the trial court did not abuse its discretion.

 C. Fact Witness

 ¶ 26. During the February 5, 2019 bench trial, the trial court prevented the Lofts’ counsel

from soliciting testimony from Sean Ryan, the Lofts’ fact witness, about the cause of the blue

spots. The following exchange occurred:

 [Lofts’ Counsel]: And the [blue spots] that you’ve seen in the
 flooring product in my client’s building, do you have an opinion as
 to whether those are manufacturing related?

 [Strategis’ Counsel]: Excuse me. I’m going to object. This was
 never disclosed as an expert testimony, and so I object on that
 grounds.

 THE COURT: Mr. Bergeron?

 [Lofts’ Counsel]: So Mr. Ryan is not a retained expert from us.
 He’s a fact witness by virtue of his participation in the events giving
 rise to the case.

 THE COURT: Well, you can’t call him to just give a litigation
 opinion, then. Perhaps if he offered one as he was doing the work,
 that might be [a] fact witness. But trying to get him to give an
 opinion here that he didn’t come up with as part of his work, I think,
 is not permitted.

(Emphasis added.) On appeal, the Lofts argues that under Hutchins v. Fletcher Allen Health Care,

Inc., 172 Vt. 580, 582, 776 A.2d 376, 379 (2001) (mem.), the trial court erred because Mr. Ryan,

 12
as a fact witness, was exempt from the disclosure requirements of Vermont Rule of Civil Procedure

26(b)(5).

 ¶ 27. “[W]e review trial court decisions on the admissibility of expert testimony only for

abuse of discretion.” 985 Assocs., Ltd v. Daewoo Elecs. Am. Inc., 2008 VT 14, ¶ 9, 183 Vt. 208,

945 A.2d 381. Rule 26(b)(5) requires a party, upon request of the opposing party, to disclose the

identity of expert witnesses who will be called at trial. In Hutchins, however, this Court recognized

that “ ‘[a]n expert whose knowledge or opinions are relevant because of his participation in the

events giving rise to suit should be treated for discovery purposes as an ordinary [that is non-

expert] witness.’ ” Hutchins, 172 Vt. at 582, 776 A.2d at 379 (quoting Reporter’s Notes, V.R.C.P.

26); see also Lamell Lumber Corp., 2007 VT 83, ¶ 22.

 ¶ 28. As an initial matter, Strategis does not concede that Hutchins is still good law, given

that on July 1, 2019, Rule 26(b)(5) was amended to require parties to disclose expert witnesses

“whether or not the witness may also testify from personal knowledge as to any fact in issue in the

case.” V.R.C.P. 26(b)(5)(A)(i)(I). The Reporters Notes indicate that “[t]he amended rule changes

prior practice as exemplified by Hutchins.” Reporter’s Notes—2019 Amendment, V.R.C.P. 26;

see also Filter Equip. Co. v. Int’l Bus. Machs. Corp., 142 Vt. 499, 503, 458 A.2d 1091, 1093 (1983)

(explaining that Reporter’s Notes are “not binding upon the Court,” but they “have a persuasive

effect similar to that of legislative history”). We need not decide whether this amended rule applies

retroactively because assuming, without deciding, that Hutchins is controlling authority for this

case, the trial court did not err.

 ¶ 29. Here, while Mr. Ryan was certainly a fact witness in the events giving rise to the

suit, his participation did not involve determining the cause of the blue spots. Rather, the record

reflects that the Lofts contacted Mr. Ryan to assist in submitting a warranty claim primarily by

providing an estimate of the cost of replacing the discolored flooring. Joseph Villemaire testified

 13
that the Lofts was able to reach out to the distributor with the assistance of Mr. Ryan and later

testified that Mr. Ryan prepared an estimate to replace the flooring. During Mr. Ryan’s trial

testimony, he acknowledged he prepared an estimate for the replacement of the flooring and

detailed how he reached his conclusions on cost. Finally, and most importantly, during trial,

counsel for the Lofts, conceded that Mr. Ryan “was disclosed as a fact witness only because of his

involvement in estimating the cost of the new flooring and installing the new flooring.”

 ¶ 30. Furthermore, although the trial court initially prevented Mr. Ryan from testifying

about causation, the court provided counsel with another opportunity to show that Mr. Ryan

developed an opinion on causation during his participation in the events giving rise to the suit so

that he could qualify as a fact witness under Hutchins. The trial court explained that “you can’t

call [Mr. Ryan] to just give a litigation opinion,” but “[p]erhaps if he offered one as he was doing

the work, that might be [a] fact witness.” Counsel did not, however, return to the issue of causation

during Mr. Ryan’s testimony.

 ¶ 31. In sum, although Mr. Ryan was a fact witness, he did not develop an opinion as to

the cause of the discoloration based upon “ ‘his participation in the events giving rise to [the]

suit.’ ” Hutchins, 172 Vt. at 582, 776 A.2d at 379 (quoting Reporter’s Notes, V.R.C.P. 26). He

was only hired to develop an opinion on the cost of replacing the flooring, not on the cause of the

alleged manufacturing defect. The trial court accordingly did not abuse its discretion in preventing

Mr. Ryan from testifying about the cause of the blue spots.

 IV. Vermont Consumer Protection Act

 ¶ 32. The trial court held that Strategis could not be liable under the VCPA because

“there [was] no evidence that Strategis knew or should have known of the problem” with the LVP

flooring. On appeal, the Lofts argues that the trial court committed legal error in this conclusion

because knowledge is not an element of a VCPA claim. We need not resolve the issue and affirm

 14
because the Lofts has failed to identify a misrepresentation likely to mislead a reasonable

consumer. See Gosbee v. Gosbee, 2015 VT 82, ¶ 26 n.4, 199 Vt. 480, 125 A.3d 514 (“We may

affirm the judgment of the trial court if there is any legal ground for justifying the result . . . .”

(quotation omitted)).

 ¶ 33. This Court reviews questions of law de novo. In re T.C., 2007 VT 115, ¶ 12. The

VCPA broadly prohibits “unfair or deceptive acts or practices in commerce.” 9 V.S.A. § 2453(a).

 To establish a deceptive act or practice under the Act, plaintiffs
 need[] to show that: (1) there was a representation . . . likely to
 mislead them; (2) they interpreted the message reasonably under the
 circumstances; and (3) the misleading effects were material, that is,
 likely to affect [plaintiff’s] conduct or decision with regard to a
 product.

Vastano v. Killington Valley Real Estate, 2007 VT 33, ¶ 8, 182 Vt. 550, 929 A.2d 720 (mem.)

(quotation omitted).

 ¶ 34. Under the VCPA’s “objective standard, a consumer establishes the first element if

she proves that the representation or omission had the tendency or capacity to deceive a reasonable

consumer.” Jordan v. Nissan N. Am., Inc., 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40. “To be

reasonable, moreover, the consumer’s understanding need not be the only one possible; if an ad

conveys more than one meaning to reasonable consumers and one of those meanings is false, that

ad may be condemned.” Carter v. Gugliuzzi, 168 Vt. 48, 56, 716 A.2d 17, 23 (1998) (alteration

and quotation omitted).

 ¶ 35. Here, the Lofts alleges that there was a misrepresentation because the Strategis

marketing brochure it received from Crowley Floors advertised LVP as a “spectacular, lifelike

wood” floor, and it asserts that “[f]loors made of natural [m]aple wood do not develop large,

unsightly blue-green spots all over them.”9 It is true, as the Lofts contends, that natural wood

 9
 The Lofts suggests that the [trial] court concluded in the summary judgment ruling that
the statement in the marketing brochure was a misrepresentation because “[f]loors made of natural
 15
floors do not develop blue-green spots all over them. This alone, however, is not sufficient to

demonstrate that Strategis’ marketing brochure would mislead a reasonable consumer because the

trial court ruled that the blue spots in the LVP flooring were not the result of a manufacturing

defect. There is accordingly no evidence that Strategis misrepresented its LVP product. See

Westfield Ins. Co. v. HULS Am., Inc., 714 N.E.2d 934, 950 (Ohio Ct. App. 1998).

 Affirmed.

 FOR THE COURT:

 Associate Justice

[m]aple wood do not develop large, unsightly blue-green spots all over them.” There are two
problems with this argument. First, as discussed above, supra ¶¶ 11-14, the trial court’s summary
judgment ruling is not subject to appellate review. Second, the trial court made this statement in
the context of analyzing the Lofts’ express-warranty claim. Contrary to the Lofts’ suggestion, the
trial court did not actually address whether the statement contained in the marketing brochure was
a misrepresentation under the VCPA.
 16