Filed 03/07/24

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT  05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-04017

| Benjamin Currier v Nick Deml et al |
| :---: |

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment with Exhibits (Motion: 5)
Filer:        Pamela Eaton
Filed Date:   January 17, 2024

The motion is GRANTED IN PART and DENIED IN PART.

Respondent Department of Corrections has moved for summary judgment in this matter based on Petitioner's failure to disclose a medical expert.  Petitioner Currier opposes this motion and contends that the evidence is sufficient to carry his burden of proof and production to establish his right to relief.

### Background and Posture of the Case

The present action is not a medical malpractice claim.  It is a Rule 75 appeal seeking judicial review of a medical determination made by the Department of Corrections or agents of the Department in how to treat Petitioner.  Under Vermont law, the Department has a statutory obligation to provide health care "in accordance with the prevailing medical standards."  28 V.S.A. § 801(a).  Issues of whether the Department has met this standard in providing specific medical care to an inmate may be appealed and reviewed under Rule 75.  *Plante v State of Vermont*, Dckt. No 22-CV-01843 (Jun. 9, 2023) (Tomasi, J.).

> The Court has found that Section 801(a) sets a legislatively mandated floor for medical care that the DOC may not fall below and that mandamus review is available under Rule 75 to enforce that mandatory duty. Whether Section 801(a) could provide an independent cause of action on its own is irrelevant under such circumstances. Its provisions can be policed through Rule 75.

Id.

For the purposes of the present motion, the following material facts are uncontested. Petitioner Currier is a prisoner incarcerated and under the custody and care of the Vermont

Department of Corrections. Petitioner suffers from chronic sciatic nerve pain, which pre-dates his incarceration. When Petitioner's sciatica is not properly medicated, he is left in a tremendous amount of pain. When Petitioner is in the community, he is prescribed Gabapentin for this issue and has been on this medication for more than a decade.

During three separate periods of incarceration (Nov. 2019 to Feb. 2020, Mar. 2020 to Aug. 2020, and Apr. 2022 to present), Petitioner entered the facility with a valid prescription for Gabapentin, and in each instance, the Department tapered Petitioner off this medication. In addition to Gabapentin, Petitioner also entered the facility with prescriptions for Ritalin and Wellbutrin. These medications were also tapered off and discontinued by the Department. In each case, the decision to taper and remove Petitioner arose from the medical care provider in the facility, and in at least one case, it was the result of a full medical examination that the medical care provider conducted on Petitioner. The record also shows that Gabapentin is not approved by the FDA. In lieu of these medications, the Department prescribed Petitioner other medications, including a topical gel, Tylenol, and naproxen.

Following the first two periods of incarceration when Petitioner was returned to the community, he was also restored to his medications by his community medical provider outside the facility.

Petitioner claims that he has suffered extensive pain and anxiety from his lack of medications inside the facility. The Department claims that their treatments stabilized Petitioner and that there is no record of continuing pain or discomfort.

Petitioner timely grieved the Department's most recent decision to remove him from his three medications, and the Department's response referred Petitioner back to his care providers. Petitioner filed the present Rule 75 action in November of 2022. He amended his complaint a year later in November 2023 and was required, under the parties' joint discovery schedule adopted pursuant to V.R.C.P. 16.2 to disclose an expert witness in this matter on or before November 19, 2023. To date, Petitioner has offered no expert witness, but he has indicated that his community health care provider outside the facility would testify about the care that the provider has given him and the needs of Petitioner's condition. This provider has not been disclosed as an expert and has not provided an expert opinion.

## Standard of Review

Summary judgment is appropriate if the evidence in the record, found in the statements required by V.R.C.P. 56(c)(2), shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. V.R.C.P. 56(c)(3); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994). The Court derives the undisputed facts from the parties' statements of fact submitted under V.R.C.P. 56(c)(2), and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact, but it must produce evidence or affidavits to support the opposition. *Murray v. White*, 155 Vt. 621, 628 (1991).

In this instance, the Court's examination is limited by V.R.C.P. 75. Rule 75 allows judicial review of governmental administrative decisions, but only "if such review is otherwise available by law." While the case law interpreting Rule 75 has insulated the majority of discretionary administrative decisions made by the Department from judicial review, the Court may still review quasi-judicial decisions in accordance with the principles of certiorari review. See, e.g., *Rheaume v. Pallito*, 2011 VT 72, ¶11. The scope of certiorari review under Rule 75 is very narrow. "[W]hen reviewing administrative action by the [Department] under V.R.C.P. 75, we will not interfere with the Department's determinations absent a showing that the [Department] clearly and arbitrarily abused its authority." *King v. Gorczyk*, 2003 VT 34, ¶ 7; *Molesworth v. University of Vermont*, 147 Vt. 4, 7 (1986) (certiorari review "confined to addressing substantial questions of law affecting the merits of the case.").

## Legal Analysis

The sole issue for summary judgment is the question of whether Petitioner can establish whether or not the Department violated "the prevailing medical standards" in its treatment of Petitioner. 28 V.S.A. § 801. To be more precise, Petitioner's burden in this area is two-fold. First, he must establish what the prevailing medical standard is for the treatment of his illness or condition. Second, he must establish how the Department's care fell below this standard. *Senesac v. Associates in Obstetrics and Gynecology*, 141 Vt. 310, 314 (1982). The two ideas work together as a major and minor premise to give the finder of fact the basis to make a finding that the Department had a specific duty of care to follow, and that its actions breached its duty of care. *Begin v. Richmond*, 150 Vt. 517, 520 (1988).

The reason both are important is because there may be multiple treatments or treatment pathways available to an individual suffering from a particular illness. Some of those treatments may be more effective for a particular individual, but the question is not which treatment proves more effective, but whether the illness and circumstances require the provider to make a particular choice between the varying forms of treatment. By way of example, an individual might be suffering from a particular illness and self-treats with a number of herbal supplements. This course of treatment might even prove effective. If that individual is then incarcerated and is given a medical examination that results in him being taken off the herbal supplements and put on the standard and prevailing pharmacological regimen for this illness, which yields fewer positive results, than the supplements, There is no violation of the standard of care simply because of the lower result of the new treatment. That is because the choice made by the Department is consistent with its legislative obligation under 28 V.S.A. § 801(a).

This example also illustrates the dangers of oversimplification. Medicine, like the law, and many other professions, relies on information and deals with nuance. Treatment regimens evolve over time, and new medications do not immediately overtake or push out older standards of treatment. Some decisions in courses of treatment depend on details. If a person is allergic to an ingredient in a medication, then that medication is likely unsuitable for that person. Yet, the standard of care is not necessarily an individual standard. A provider does not breach the duty of care if in choosing between two equally valid courses of treatment she selects the less effective one for the patient. The complexity of these issues is precisely why Courts have uniformly adopted the requirement that the standard of care, among other medical malpractice elements, must be established by expert testimony. *Bittner v. Centurion of Vermont, LLC*, 2021 VT 73, ¶¶24, 25; *Larson v. Candlish*, 144 Vt. 499, 502 (1984); *Senesac*, 141 Vt. at 313–15. While there are exceptions, they are limited to either blatantly obvious errors or to instances where the treatment provider admits to the mistake. *Taylor v. Fletcher Allen Health Care*, 201 VT 86, ¶¶ 9, 10 (discussing the "common sense exception"). The determination of this issue is primarily an issue of law for the Court to determine. *Bittner*, 2021 VT 73, at ¶ 19, n.3 (noting that the Court must make this determination as a matter of law).

In this case and in this motion, the issue is not on the formulation of breach, the minor premise. There is more than adequate evidence that there were two competing treatment methodologies, that the Department's treatment methodologies potentially caused Petitioner to

suffer more pain, then the other, and that the other methodology, when restored, appears to have reduced and stabilized Petitioner's condition.[1] Instead, the issue is the major premise and the identification of a particular standard of care. 28 V.S.A. § 801(a). To determine this standard, the Court must look at the nature of the illness and the prevailing methods of treatment. Petitioner claims that his suffers from chronic sciatica as well as various mental health issues. Determining the appropriate treatment for these ailments is sufficiently complicated. The Court is not aware of any common-sense determinations to be made about the appropriate treatment for sciatica or for Petitioner's mental health issues as a general principle. For a finder of fact to make a factual determination about what course of treatment was appropriate and consistent with the prevailing standard of medical care under Section 801, they would need testimony from an expert with a sufficient level of education, training, and skill that is not within the common understanding. *Taylor*, 2012 VT 86, at ¶ 9. For these reasons, the Court determines that an expert witness is necessary in this case to determine the threshold question of what is the appropriate standard of care that the Department owed to Petitioner.

In making this determination, the Court rejects the proposal by Petitioner to effectively draw a comparison between the nature and quality of his treatment outside of the facility with the care and treatment received within the facility. Such a comparison may be helpful in establishing breach, and such a comparison, as part of Petitioner's medical history, might be helpful to an expert witness in opining about the appropriate standard of care, but by invoking it as the standard of care, Petitioner is doing an end-run around the requirement that he provide sufficient evidence to establish this standard of care. Effectively, he is putting the fact finder in the position of the expert by making the fact finder compare two treatments methodologies and using the subjective outcomes as a determining factor. Such methodology is inconsistent with Vermont caselaw, and the Court has found no support for the proposition either in Vermont or in another jurisdiciton.

In the alternative, Petitioner also contends that he can meet his burden to establish the standard of care through testimony from his outside medical provider.[2] This raises an issue of

---

[1] While the Department contests these facts, for the purpose of the present motion, the Court will presume these facts in favor of Petitioner as non-moving party. *Hammond v. University of Vermont Medical Center*, 2023 VT 31, ¶ 23.

[2] On this point, the Department urges the Court to limit the holding of *Senesac* by drawing a distinction between a "defendant doctor" and a doctor treating a party. (Resp. Reply Mar. 1, 2024 at *6, n.3). This distinction may be true for in interpreting the holding of *Senesac*, but nothing in that decision prevents a treating doctor from also

whether Petitioner's medical provider outside the facility can testify as both a fact and an expert witness without being disclosed as the latter.[3]

It is undisputed that Petitioner's outside medical provider has not been disclosed as an expert witness, but they have been discussed and disclosed as a potential fact witness. Prior to 2019, such a disclosure would open a window to expert testimony under Rule 26, which as the Vermont Supreme Court noted in *Hutchins*, allowed a sufficiently qualified fact witness to offer an expert opinion so long as the opinion arose from "participation in the events that gave rise to the litigation and not in anticipation of litigation or for trial." *Hutchins v. Fletcher Allen Health Care, Inc.*, 172 Vt. 580, 582 (2001) (internal quotations omitted).

This practice has been called into significant question with the 2019 changes to Rule 26, which now requires each party "to identify each person whom the other party may use at trial to present expert testimony under Vermont Rules of Evidence 702, 703, or 705, whether or not the witness may also testify from personal knowledge as to any fact in issue in the case . . . ." V.R.C.P. 26(b)(5)(i)(I). As the 2019 reporters' notes indicate, this change to the Rules was intended to alter the prior practice allowed under *Hutchins*. V.R.C.P. 26, 2019, rptr. n.; see also *Lofts at Essex, LLC v. Strategis Floor and Décor, Inc.*, 2019 VT 82, ¶¶ 27–31.

The policy behind this change appears to arise from the issue of notice. The purpose of expert witness disclosures is particularly important as an expert witness' opinion has three parts: the opinion; the training and experience that qualifies the witness as an expert; and the methods and information used to form the opinion. An adverse party has a right to understand all three components as any three can give rise to a threshold challenge o the witness' qualifications. *Estate of*

---

serving as an expert witness if that witness is qualified and has formed an expert opinion. 141 Vt. at 314–15. Instead, *Senesac*, at its most narrow, *Senesac* stands for the proposition that if a party has the expertise and qualifications, they may serve as their own expert. Id. *Senesac* treats this as a type of exception to the requirement that a party retain a third-party expert. Id. As noted below, the analysis on this case rests less on whether a fact-witness (regardless of whether they are a party or a third-party witness) can also provide an opinion as an expert witness, then upon how the party discloses such an enlargement to the Court and to the other party.

[3] This question may also be somewhat more complicated. Petitioner's filing is somewhat ambiguous as to whether this medical care provider will just be providing testimony about the course of care and treatment they have provided to Petitioner, or if they will also be offering an expert opinion on the relevant standard of care in this case under 28 V.S.A. § 801(a). For the purposes of this motion, the Court will presume that Petitioner intends to present this more expansive range of testimony since the omission of such testimony would effectively render Petitioner without an expert witness to offer an opinion on the Section 801 standard of care.

*George v. Vermont League of Cities and Towns*, 2010 VT 1, ¶ 36. The 2019 changes to Rule 26 codify this conception that where an expert opinion is a key part of a prima facie case, parties need to disclose their experts during discovery and cannot smuggle such opinions into a case through a fact-witness.

Based on this, the Court finds that Petitioner has failed to carry his obligation in this case to establish his fact witness as an expert witness, and the outside medical provider cannot be permitted at this time to testify as an expert witness.

## A Limited, Reasonable Extension of Discovery

While the Court finds that Petitioner has generally failed his burden as of today, the Court finds there are two factors that warrant a limited re-opening of the discovery window to prevent a manifest injustice. V.R.C.P. 16.2. First, there is the nature of the claim, which is a Rule 75 appeal that does not seek monetary damages but seeks to compel a change in Petitioner's medical treatment regimen and the nature of Petitioner's incarceration and medical condition, both of which appear to be chronic. In this respect, the Court finds that dismissing this matter only puts off the inevitable question. The next refusal to provide Petitioner with his preferred medications will give rise to a new Rule 75 claim, which will not be precluded under res judicata or claim preclusion grounds as a dismissal today would be for technical reasons, rather than adjudication on the merits.

Instead of putting the State, the Court, and the Petitioner through this delay and additional expense with an all but certain re-filing, there is some sense in providing a short window to allow the existing provider to disclose and cure the discovery and notice issue. In this respect, the second factor is relevant. The extension that the Court will allow is to supplement and is not a broad extension. The Court expressly does not permit Petitioner to hire or retain a new expert. The Court is granting an extension for a limited window to allow Petitioner to permit his fact-witness to disclose as an expert witness and allow for meaningful discovery and disclosure, if that is, in fact, what Petitioner has procured from his outside medical provider.

To this end, the Court will give Petitioner 30 days to disclose his outside medical provider as an expert witness and to provide the Department with an expert opinion from the provider as well as the foundations for the expert's qualification and the basis for their opinion, as well as any other necessary disclosures consistent with the disclosure obligations under V.R.C.P. 26(b)(5). Following this disclosure, the Department may seek discovery through written interrogatories, requests to

produce, and deposition of the witness in the 60 days following the disclosure of Petitioner's witness. Upon completion of this discovery, the Department shall have 30 days to disclose its rebuttal expert, and Petitioner shall have 60 days to seek discovery on that witness. Any time during this process, parties may file a motion in limine if they seek to challenge the witnesses under *Daubert*. See *Estate of George*, 2010 VT 1, ¶ 36.

## ORDER

The Department's Motion for Summary Judgement is **Granted in Part and Denied in Part**. The Court concludes that the present medical claims brought by Petitioner require an expert witness to establish the "prevailing medical standards" that apply to his medical condition and the treatment that the Department provided to Petitioner under 28 V.S.A. § 801(a). The Court finds that to date Petitioner has not disclosed an expert witness to satisfy this obligation.

Given the nature of the case, and the factors discussed above, the Court will exercise its discretion under V.R.C.P. 16.2 to allow Petitioner a short enlargement of time to disclose an expert witness opinion from the existing fact witness to comply with the requirements of V.R.C.P. 26(b)(5)(i))(I). Petitioner has 30 days to (1) disclose an existing witness as an expert witness; (2) produce an expert witness opinion; and (3) produce the witness' qualifications and basis for this opinion. Following such disclosure, the Department shall have 60 days to conduct written discovery and deposition and may disclose a rebuttal expert 30 days after such discovery, which shall be subject to the same window of opportunity for discovery by Petitioner.

If Petitioner provides no expert disclosure or a substantially incomplete disclosure within the 30-day window, the Department may renew its motion for summary judgment consistent with this Decision.

Electronically signed on 3/6/2024 9:11 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge