2010 VT 115

Frank VENTURELLA, Sr., et al. v.
ADDISON-RUTLAND
SUPERVISORY UNION, et al.

[12 A.3d 558]

No. 09-344

¶ 1. December 15, 2010. Plaintiffs and amicus curiae, the Vermont Human Rights Commission,[1] appeal the superior

court's judgment based on a jury verdict in favor of defendant school district in this harassment case. The jury found that plaintiffs, two children who were allegedly harassed by peers, failed to prove they were the victims of harassment "that was so severe, pervasive, and objectively offensive" that it deprived them of "access to the educational opportunities or benefits provided" by their school. The Commission argues that errors in the jury instructions require reversal. We conclude that these claims were not preserved and affirm.

¶ 2. The Commission argues that the trial court made two types of errors in its instructions to the jury. First, the Commission claims that the trial court erred in defining harassment. Second, it argues that the trial court erred in requiring that the jury take into account the age of persons engaging in harassment. We consider each of these claims separately, referring to the first claim as the "definition argument" and to the second claim as the "contextualization argument."

¶ 3. In support of its definition argument, the Commission maintains that, in defining "harassment," the trial court misread the narrow holding of *Washington v. Pierce,* 2005 VT 125, 179 Vt. 318, 895 A.2d 173, in which this Court affirmed the existence of a private statutory right of action for peer harassment. As part of this definitional issue, the Commission argues that the trial court mistakenly required the jury to find harassment had to be "severe, pervasive, *and* objectively offensive," (emphasis added), claiming that under the Vermont Public Accommodations

---

[1] Plaintiffs filed a pro se notice of appeal. Thereafter, the Commission appeared amicus curiae by right as a state agency, V.R.A.P. 29, and moved to be appointed to assist plaintiffs in presenting the appeal. The Commission then withdrew its motion to be appointed to assist plaintiffs, and the Executive Director of the Commission instead entered an appearance for plaintiffs and filed joint briefs for both plaintiffs and the Commission. In the text, we refer to the arguments as coming from the Commission because they were made by its director.

Act (VPAA), 9 V.S.A. §§ 4500-4507, and related provisions of 16 V.S.A. § 11, harassment need not be "severe or pervasive" and certainly not both "severe *and* pervasive" (emphasis added). In addition, the Commission argues that harassment need not necessarily be "objectively offensive" under 16 V.S.A. § 11(a)(26)(A). Lastly, the Commission claims that the trial court's definition of harassment was in error because it required a showing that plaintiffs were "deprived" of access to educational opportunities. Instead of requiring "outright deprivation," the Commission argues that the relevant statutes require proof only that the offending conduct meets a lesser standard of "detracting" or "interfering" with access.

¶ 4. In its contextualization argument, the Commission claims that the jury instructions improperly directed the jury to contextualize the conduct of the harassing students by "in effect reminding the jury that 'boys will be boys,'" while at the same time precluding the jury from contextualizing the reactions of the victims by stating that the harassment must be "objectively" assessed.

¶ 5. As a general matter, issues not raised at the trial court are unpreserved, and this Court will not review them on appeal. *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230. Moreover, objections to jury instructions are specifically addressed in Vermont Rule of Civil Procedure 51(b), which states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." To preserve an issue related to jury instructions on appeal, the objecting party must also renew any objection made during the charge conference after the court instructs the jury. *Follo*, 2009 VT 11, ¶ 14. Defendant argues that plaintiffs failed to preserve an objection to the instruction language the Commission challenges on appeal.

¶ 6. Following the jury charge in this case, plaintiffs' counsel stated: "I just want to renew my objection of the use of the language under *Davis* that we previously discussed."[2] As we explain below, it is clear that the "language under *Davis*" refers to Justice O'Connor's majority opinion in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999). At a charge conference, defendant asked for the addition of this language, and the trial court agreed. Plaintiffs objected saying: "the *Davis* case was a Title 9 case and . . . the standards set forth in *Washington v. Pierce* specifically rejected the Title 9 standard." The language to which plaintiffs' counsel objected in this statement is the language challenged in the Commission's contextualization argument as set out below. Plaintiffs' counsel apparently revisited the objection in a discussion just before closing arguments. Counsel repeated that "Justice O'Connor's opinion was based on . . . Title 9 . . . , not on an analysis based under public accommodations act, nor did it take into consideration Vermont specific law in 16 V.S.A. 550, 565."[3] She added "I actually have some language in my desk from the Vermont Human Rights Commission's interpretation of [inaudible] say that, which does acknowledge in [inaudible] way, what Justice O'Connor said, but not in the detail, which I think is way over-emphasized."[4]

¶ 7. The above objection and a second dealing with transportation expenses as

[2] The transcript in this case was based on an audio recording of the proceedings. It was filed pursuant to Vermont Rule of Appellate Procedure 10(a) and contained numerous instances where the transcriber indicated that a speaker's voice was inaudible. A staff member of this Court listened to the tape and was able to capture more of the conversation.

[3] See, *supra*, n.2.

[4] See, *supra*, n.2.

an element of damages were the only two objections that counsel made following the reading of the charge.

¶ 8. The Commission's challenges to the jury instructions in its definition argument have appeared for the first time in this Court. In fact, when the trial court previewed its definition of harassment at the charge conference, plaintiffs' counsel stated "I agree with your charge as written," objecting only, as discussed above, to the quote from *Davis*. Counsel did not object to the definition of harassment following the reading of the instructions to the jury. We conclude, therefore, that plaintiffs failed to preserve the definition argument for consideration on appeal.

¶ 9. The contextualization argument is also being made for the first time in this Court. Although plaintiffs' counsel objected to the same charge language that is being challenged here, the ground for the objection — that the court was inappropriately quoting language based on Title IX of the Federal Education Amendments of 1972 — was totally different from that being raised here. Certainly, the vague post-charge objection to "the use of the language under *Davis* that we previously discussed" did not state "distinctly the matter objected to and the grounds of the objection," such as to include the contextualization argument as required by Rule 51(b). See *Schaad v. Bell Atl. NYNEX Mobile, Inc.*, 173 Vt. 629, 631, 800 A.2d 455, 458 (2002) (mem.); *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 137-38, 636 A.2d 744, 750 (1993).

¶ 10. Plaintiffs seek to avoid the application of Rule 51 and our case law by arguing that the trial court committed plain error in the jury instructions. This Court considers plain error only under limited circumstances in civil cases, specifically, when "an appellant raises a claim of deprivation of fundamental rights, or when a liberty interest is at stake in a quasi-criminal or hybrid civil-criminal probation hearing." *Follo*, 2009 VT 11,

¶ 16 (citation omitted). Plaintiffs argue that the current case involves a fundamental right to public education, recognized in the Vermont Constitution, and should therefore warrant plain error review. In making this argument, plaintiffs' claim their case is similar to *Varnum v. Varnum*, 155 Vt. 376, 586 A.2d 1107 (1990), in which this Court reviewed a claim of unpreserved error, finding that the claim involved "fundamental rights and interests." *Id.* at 383, 586 A.2d at 1111. This case is, however, distinguishable from *Varnum*.

¶ 11. *Varnum* was a divorce action in which the issue before this Court was the custody of two children. The wife in *Varnum* appealed the trial court's award of both legal and physical custody to her former husband, claiming, in part, that the trial court had impermissibly considered her religious beliefs and activities in awarding custody, in violation of the United States and Vermont Constitutions. We recognized, therefore, that fundamental rights and interests were at stake: both the constitutionally guaranteed right to religious liberty, which occupies a "preferred position" in the United States Constitution, and the constitutionally protected liberty interest in maintaining a familial relationship with one's child. *Varnum*, 155 Vt. at 383, 586 A.2d at 1111; see also *Osier v. Osier*, 410 A.2d 1027, 1029 (Me. 1980).

¶ 12. Comparing the current case to *Varnum*, plaintiffs argue that their case presents "a violation of a no less fundamental right [than] . . . the right to public education." While we recognize the importance of access to public education, we do not need to reach whether deprivation of such access involves such a fundamental constitutional right to require plain error review. This is because the ultimate outcome of the current case will not bear on the plaintiffs' access to education, but rather on whether they receive compensatory damages for harm allegedly

caused to them in the past. In *Varnum*, the decision of this Court determined the physical and legal custody of children prospectively. Plaintiffs acknowledge that a claim of plain error was considered in *Varnum* not only because of the claimed deprivation of the right to free exercise of religion, but also because the present and future well-being of minor children was involved. In the current case, the decision of this Court will not have an impact on plaintiffs' current or future access to public education — it will determine only whether plaintiffs should be awarded damages for past conduct. Access to compensatory damages, even for alleged deprivation of or interference with the right to public education, is not the kind of fundamental right we recognized in *Varnum*. Under these circumstances, the failure of plaintiffs to preserve their claims of error in the jury instructions is an absolute bar to judicial review of these alleged errors.

*Affirmed.*