NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 2

No. 2020-031

Zachariah Blondin

   v.

Milton Town School District et al.

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Civil Division

September Term, 2020

Helen M. Toor, J.

Jerome F. O'Neill, Celeste E. Laramie, and Chase S. Whiting of Gravel & Shea PC, Burlington,
  for Plaintiff-Appellee/Cross-Appellant.

Pietro J. Lynn, Sean M. Toohey, and Adrienne Shea of Lynn, Lynn, Blackman & Manitsky, P.C.,
  Burlington, for Defendant-Appellant/Cross-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **COHEN, J.**   Defendant Milton Town School District and plaintiff, a high-school football player who sued the District after being assaulted by team members during an off-campus team dinner at the residence of one of the players, both appeal various trial court rulings and the jury's verdict in favor of plaintiff following a five-day jury trial. We affirm.

¶ 2.     Plaintiff sued the District[1] in April 2017, claiming negligent supervision and a violation of the Vermont Public Accommodations Act (VPAA) in connection with his assault at the hands of fellow football team members at an on off-campus dinner in the fall of 2012. In his complaint, plaintiff alleged the following facts. He was a freshman football player at Milton High

_____

[1] Plaintiff initially also sued the Town of Milton and the Town of Milton School Board, but he voluntarily dismissed his claims against the Town in late summer 2017 and the Board on the first day of trial in November 2019.

School in the fall of 2012. At that time, the District was aware that members of the football team had engaged in past acts of harassment, including sexual assaults and hazing, against underclassmen team members.[2] In October 2012, nine or ten members of the team, including plaintiff, attended a team dinner at one of the player's parents' home. At some point that evening, plaintiff was dragged down to the basement and thrown onto a couch, where one player held plaintiff down while another player forcibly inserted a pool cue into plaintiff's rectum.

¶ 3. In August 2013, the Milton High School principal spoke to plaintiff and another football player after learning that some incoming freshman did not want to play football because they had heard rumors of team members using broomsticks to initiate new team members. When the principal told plaintiff that she would shut down the football program if the rumors proved to be true, plaintiff denied the rumors because he feared retaliation from other students for causing the football program to be shut down. The principal then directed plaintiff to speak to the incoming freshman and tell him he had lied about the use of broomsticks during the initiation of new team members. When the principal informed the district superintendent about the rumors, the superintendent declined to do anything further.

¶ 4. In April 2014, the Department for Children and Families (DCF) opened an investigation into allegations concerning the Milton High School football team. After a later investigation by the Chittenden Unit for Special Investigations, the Chittenden County State's Attorney filed criminal charges against five Milton High School football players, including plaintiff's attackers, all of whom pled guilty to criminal offenses related to harassment, hazing, and assault.[3]

---

[2] One victim of a sexual assault by team members committed suicide in August 2012, approximately one year after being assaulted. That assault eventually led to a lawsuit against the Milton Town School District, which ended with this Court affirming the civil division's summary judgment ruling in favor of the District. See Stopford v. Milton Town Sch. Dist., 2018 VT 120, ¶ 1, 209 Vt. 171, 202 A.3d 973.

[3] Plaintiff did not allege that any of the criminal charges stemmed from the October 2012 attack on him that is the subject of this lawsuit.

¶ 5.    Based on these and other alleged facts, plaintiff claimed that the District: (1) failed to prevent and remediate the harassment of its students, including plaintiff, by members of the football team, in violation of the VPAA; and (2) negligently breached its duty to supervise the Milton High School football team, resulting in plaintiff's injuries.  The District denied these claims and raised several affirmative defenses, including failure to exhaust administrative remedies and comparative negligence.

¶ 6.    In March 2019, following discovery, the District moved for summary judgment, which the trial court denied in a July 2019 order.  Regarding plaintiff's VPAA claim, the court rejected the District's contention that plaintiff could not move forward to trial on the claim because he had failed to exhaust his administrative remedies, as required by the Act.  Examining the elements of the Act and its exceptions to the exhaustion requirement, the court concluded that a jury could find, based on the alleged facts, that the District failed to act upon a complaint of harassment, that a complaint would have been futile, and/or that requiring exhaustion would have subjected plaintiff to substantial and immediate harassment.  See 16 V.S.A. § 570f(b)(1)-(5) (requiring exhaustion of administrative remedies unless claimant demonstrates one of five listed circumstances).  Regarding plaintiff's negligent supervision claim, the court concluded that a jury could find that the District breached its duty to protect plaintiff from an unreasonable risk of foreseeable injury because a question of fact remained as to when the District had notice of prior acts of harassment and assault by football team members against other team members.

¶ 7.    The jury trial was held in November 2019.  After plaintiff rested his case, the District moved for judgment as a matter of law on both of plaintiff's claims.  See V.R.C.P. 50 (establishing procedures for seeking judgment as matter of law in actions tried by jury).  With respect to plaintiff's VPAA claim, the District argued that plaintiff: (1) had failed to show that he was not required to exhaust his administrative remedies, and (2) had presented no evidence that his assault was motivated by his actual or perceived membership in a protected category of persons.  As to plaintiff's negligent supervision claim, the District asserted that it did not have a duty to protect

3

plaintiff at the off-campus gathering from student-assailants who had not been specifically identified as posing any risk of harm to plaintiff or anyone else. The trial court denied the motion, concluding that there were material questions of fact on both issues for the jury to decide.

¶ 8.     At the close of all evidence, plaintiff moved for judgment as a matter of law on both his claims, as well as on his opposition to the District's comparative-negligence defense. The trial court denied the motion. The jury returned a verdict awarding plaintiff $280,000 after indicating on the verdict form that sixty percent of the overall negligence in the case was attributable to the District and the remaining forty percent was attributable to plaintiff. The jury found in favor of the District on plaintiff's VPAA claim.

¶ 9.     The parties disagreed over the meaning of the jury's damages award. Plaintiff argued that he was entitled to the entire $280,000 award based on the assumption the jury made the comparative-negligence calculation in arriving at that figure. The district, on the other hand, argued that the $280,000 award had to be reduced by forty percent based on the assumption the jury had not made the comparative-negligence calculation in arriving at that figure. The court ruled in favor of plaintiff and awarded plaintiff a judgment of $280,000.[4]

¶ 10.     Following the trial court's entry of judgment, plaintiff filed: (1) a motion for a new trial on damages, or in the alternative an additur, arguing that the court erred in allowing the jury to consider his alleged comparative negligence and in not instructing the jury on punitive damages, as he had requested; and (2) a renewed motion for judgment as a matter of law, or in the alternative a new trial, arguing that he was entitled to a judgment on the VPAA claim and that the court erred in instructing the jury on that claim.

¶ 11.     The trial court ruled that punitive damages were not available against the municipally funded school district pursuant to this Court's decision in In re Town Highway No. 20,

---

[4]  The court initially ruled in favor of the District on this question based on its mistaken belief that plaintiff had not responded to the District's argument. Ultimately, the court agreed with plaintiff's contention that the jury had already made the comparative-negligence calculation.

4

2012 VT 17, ¶¶ 69-72, 191 Vt. 231, 45 A.3d 54; however, the court concluded that it had erred in allowing the jury to consider plaintiff's alleged comparative negligence, given the evidence presented at trial. Accordingly, the court granted plaintiff a new trial unless the District accepted an additur of $186,666, representing a forty percent increase in the judgment after setting aside the comparative-negligence deduction, for a total judgment of $466,666. The District accepted the additur conditioned on the outcome of an appeal, see V.R.C.P. 59(a), and both parties then appealed the judgment.

¶ 12. On appeal, the District argues that, as a matter of law, it did not owe plaintiff a duty to protect him at an unsponsored off-campus dinner, unattended by school employees, from other team members who had not been previously identified as posing a risk of harm to him or others. The District also argues that the trial court erred in determining that the jury's award of damages included the comparative-negligence calculation and in later setting aside the jury's finding of comparative negligence. In his cross-appeal, in addition to contesting the District's claims of error, plaintiff argues that the trial court erred in admitting unduly prejudicial character evidence, in failing to grant him judgment as a matter of law on his VPAA claim and then incorrectly instructing the jury on that claim, and in refusing to instruct the jury on punitive damages. For the reasons explained below, we affirm the judgment.

## I. Duty—Preservation

¶ 13. As indicated, the District first argues that it did not have a duty to protect plaintiff at an off-campus gathering from other students who had never been identified as posing a risk of harm to plaintiff or other football team members. In making this argument, the District purports to appeal from the trial court's denial of both its pretrial motion for summary judgment and its motion for judgment as a matter of law following the close of plaintiff's evidence. We conclude that the District failed to preserve for appellate review its challenges to both of these trial court rulings because, respectively, (1) its motion for summary judgment did not involve a pure question of law

5

independent of the facts of the case, and (2) it failed to renew its motion for judgment as a matter of law following the jury's verdict, as required by Vermont Rule of Civil Procedure 50(b).

¶ 14. We first consider the District's attempt to appeal from the trial court's denial of its motion for summary judgment. In its summary judgment motion, the District argued that plaintiff could not prevail on his negligent-supervision claim as a matter of law because the assault on plaintiff by other football players was unforeseeable, thereby relieving the District of any legal duty to protect plaintiff from the harm he suffered at the hands of those players. The District contended that, as in Stopford, 2018 VT 120, ¶ 20, plaintiff would be unable to present any evidence that Milton High School officials knew before the spring of 2013, months after plaintiff's assault, that any football players had engaged in sexually assaultive conduct that would have made plaintiff's October 2012 assault foreseeable. In the ensuing back-and-forth between the District and plaintiff, the parties proffered facts concerning when Milton High School officials learned of physical acts of harassment and hazing, including sexually assaultive behavior, within the football program.

¶ 15. In denying the District's motion for summary judgment on plaintiff's negligent-supervision claim, the trial court cited support in the record for plaintiff's assertions that school officials: (1) were well aware of a long history of harassing and hazing behavior within the football team before plaintiff's assault, (2) knew that another football player had quit the team and was threatening suicide due to bullying, and (3) became aware around the time of plaintiff's assault that in August 2011 another football player, Jordan Peavy, had been assaulted by team members in a similar manner and had committed suicide in August 2012. Based on the materials submitted by the parties, the court concluded that a reasonable jury could determine that these assertions were accurate and that the assault on plaintiff was foreseeable. See Stopford, 2018 VT 120, ¶ 11 ("When determining whether a material fact is disputed, the party opposing summary judgment is entitled to the benefit of all reasonable doubts and inferences." (quotation omitted)). The court also rejected the District's arguments that the school was aware of, at most, only a generalized risk of harm and that an assault by students who had not previously been identified as posing any risk to other

6

students could not be foreseeable. Among the undisputed facts noted by the court in support of its summary judgment ruling was that members of the football team regularly met on the evenings before games for dinners such as the one during which plaintiff was assaulted.[5]

¶ 16. In challenging the trial court's denial of its motion for summary judgment, the District renews its contention that it had no duty to protect plaintiff because his sexual assault by teammates was not foreseeable based on what Milton High School officials knew at the time of the assault. We conclude that the District is foreclosed from raising this argument on appeal.

¶ 17. As we have stated on multiple occasions, "a party generally cannot appeal from the pretrial denial of a motion for summary judgment" because a "trial court's judgment on the verdict after a full trial on the merits supersedes the earlier summary judgment proceedings," thereby mooting the court's summary judgment ruling. Stratton Corp. v. Engelberth Constr., Inc., 2015 VT 69, ¶ 14, 199 Vt 289, 123 A.3d 393 (alterations and quotations omitted); accord Lofts Essex, LLC v. Strategis Floor and Décor Inc., 2019 VT 82, ¶ 11 ___ Vt. ___, 224 A.3d 116. This rule "is intended for cases in which the basis for the [trial court's] denial [of summary judgment] was that the party opposing the motion had [proffered] enough evidence to go to trial." Lofts Essex, LLC, 2019 VT 82, ¶ 12 (quotation omitted).

¶ 18. We have stated, however, that pure questions of law "do not pose the same problem because the moving party at the summary judgment stage could still win on a legal issue after trial no matter how much evidence is presented during trial." Id. (quotations omitted); see Ortiz v. Jordan, 562 U.S. 180, 190-91 (2011) (concluding that claims of qualified immunity did not present

---

[5] In its brief, the District emphasizes that the dinner at which team members assaulted plaintiff was an unsponsored team dinner at a private home. But in its statement of undisputed facts submitted in support of its motion for summary judgment, the District acknowledged that: (1) plaintiff was assaulted at an October 2012 dinner attended by other members of the team at the home of one of the team members; (2) "[t]hese dinners happened regularly during the football season the day before a game"; and (3) "[i]t was customary for every team member to get invited to team dinners," although the dinners were not mandatory. The District also alleged that at least one coach was invited to the October 2012 dinner at which plaintiff was assaulted, although no coach attended the dinner.

"neat abstract issues of law" that fit into any exception to general rule disallowing challenges to denial of summary judgment following jury verdict (quotation omitted)); cf. Turner v. Roman Catholic Diocese of Burlington, Vt., 2009 VT 101, ¶¶ 22-23, 186 Vt. 396, 987 A.2d 960 (reviewing, following jury verdict in plaintiff's favor, trial court's denial of defendant's motion for summary judgment based on defendant's First Amendment claims).  As the U.S. Supreme Court stated in Ortiz, cases fitting into such an exception would involve "disputes about the substance and clarity of pre-existing law" rather than "about what occurred, or why an action was taken or omitted."  562 U.S. at 190.

¶ 19.    In this case, the District's lack-of-foreseeability argument does not come close to raising the type of abstract legal issue that would fit within the pure-question-of-law exception to the general rule precluding appeals from a denial of summary judgment following a jury verdict.[6] The record—both the parties' statements of undisputed and disputed material facts filed in

---

[6]   The most recent Restatement of Torts indicates that the question of foreseeability is ordinarily a heavily fact-based determination best considered by the jury in determining whether the defendant breached a duty owed to the plaintiff or whether that breach proximately caused the plaintiff's injuries.  See Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7(a)-(b) (Am. Law. Inst. 2010) (stating that actor ordinarily has duty to exercise reasonable care not to create risk of physical harm, but that in exceptional cases courts may limit liability in particular class of cases based on policy determinations); id, cmt. j (explaining that proper role for heavily fact-based determination of foreseeability of risk of harm is for jury to determine in considering whether duty was breached).  Several state courts have explicitly adopted § 7 of the Restatement.  See, e.g., Gipson v. Kasey, 150 P.3d 228, 231 (Ariz. 2007) (relying on Restatement (Third) in determining that foreseeability "is more properly applied to the factual determinations of breach and causation than to the legal determination of duty," and "that such an approach desirably recognizes the jury's role as factfinder and requires courts to articulate clearly the reasons, other than foreseeability, that might support duty or no-duty determinations"); Thompson v. Kaczinski, 774 N.W.2d 829, 834-35 (Iowa 2009) (adopting position of Restatement (Third) requiring courts to articulate policy principles rather than use foreseeability in making no-duty determinations); A.W. v. Lancaster Cty. Sch. Dist., 784 N.W.2d 907, 914-918 (Neb. 2010) (discussing Restatement (Third) and adopting its position "that foreseeability is not a factor to be considered by courts when making determinations of duty").  But see Goodwin v. Yeakle's Sports Bar & Grill, Inc., 62 N.E.3d 384, 389-90 (Ind. 2016) (recognizing that "the concept of foreseeability as a component of duty is not universally embraced," but "despite critiques to the contrary," declining "to chart a different course" from its "position that in some negligence actions foreseeability plays a role in the analysis of duty").  This Court has not formally adopted § 7 of the Restatement (Third), and we are not asked to do so here.

conjunction with the District's motion for summary judgment and plaintiff's opposition to that motion, as well as the evidence presented by both sides at trial—belies the District's position that it raised a pure question of law in claiming that it had no duty to protect plaintiff because his assault by teammates was not foreseeable to school officials. In short, questions surrounding the foreseeability of the assault on plaintiff—most particularly the timing of school officials' awareness of the Peavy assault[7]—were heavily fact-dependent and hotly disputed. Accordingly, this case does not fit within any exception—for pure questions of law—to the general rule foreclosing an appeal from a denial of summary judgment following a jury verdict.

---

[7] The most critical issue regarding foreseeability was the timing of the District's awareness of the sexual assault on Peavy in 2011. In his statement of undisputed facts, plaintiff stated that, "at the beginning of" the 2012 academic year, a student who had played on the 2011 football team reported to his father, a Milton High School teacher and basketball coach, that he had witnessed the September 2011 assault of the player who had just committed suicide. The basketball coach reported the assault to the athletic director, who, in turn, reported it to the principal. The principal then called the school superintendent, who opined that there was nothing to report to authorities because the victim of the assault was deceased and the player accused of assaulting him was no longer a student. Other than stating that the basketball coach's son reported the broomstick assault to his father "at the beginning of" the school year shortly after the victim's suicide, plaintiff's statement of undisputed material facts does not indicate precisely when the broomstick assault was reported to the basketball coach, then athletic director, then school principal, and then school superintendent. In response to the District's statement of undisputed facts, plaintiff stated that the school principal became aware of the broomstick assault shortly after victim's suicide in late August 2012. In its summary judgment ruling, the trial court found support for plaintiff's assertion that the basketball coach learned of the assault around the time plaintiff was assaulted. The court stated that it remained a question of fact as to when the basketball coach told the athletic director about the 2011 broomstick assault.

The dispute over this critical fact continued at trial. The athletic director initially testified that he learned of the broomstick assault in May or June of 2013 when the basketball coach came to his office the day after the coach's son told the coach about the assault, at which point he and the coach immediately went to the school principal's office to report the assault to her. The athletic director was impeached on cross-examination, however, with his prior sworn statement to a detective that he learned of the assault one year after it had occurred, which would have been August 2012. The basketball coach testified that he believed his son told him of the broomstick assault in May 2013, that he told the athletic director the day after he learned of the assault, and that both of them went immediately to the school principal to report the assault. The coach's son testified, however, that he told his father about the broomstick incident immediately after the victim's suicide in late August 2012. The principal testified that she heard about the broomstick incident from the athletic director in the summer of 2013, but that testimony was contradicted by some of the testimony noted above.

¶ 20. Next, we turn to plaintiff's contention that the District failed to preserve its lack-of-duty arguments by way of a renewed motion for judgment as a matter of law, as required by Rule 50(b). As indicated above, the District moved for judgment as a matter of law at the close of plaintiff's evidence, and the trial court denied the motion. Whenever a trial court denies a motion for judgment as a matter of law during a trial, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by that motion." V.R.C.P. 50(b). Renewal of the motion within the prescribed period following entry of judgment "is necessary to appeal from a denial of or a failure to grant a motion for judgment as a matter of law." Id.; see Foster v. Bittersweet Experience, Inc., 173 Vt. 617, 619, 796 A.2d 483, 487 (2002) (stating that Rule 50 is strictly construed). The District acknowledges that it did not renew its motion for judgment as a matter of law following the trial court's entry of judgment, thereby foreclosing any appeal from the court's denial of its pre-verdict motion for judgment as a matter of law.

¶ 21. The U.S. Supreme Court has also construed similar-but-not-identical Federal Rule of Civil Procedure 50(b) to foreclose appeals if no renewed post-verdict motion for judgment as a matter of law is made under that rule. See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 407 (2006) (holding "that since respondent failed to renew its preverdict motions as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals"). The Court explained that "[a] postverdict motion is necessary because determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Id. at 401 (alteration and quotation omitted).

¶ 22. Notably, several federal circuit courts have emphasized that "Unitherm's renewal requirement applies only to . . . challenges to the sufficiency of the evidence," and not "to challenges based on pure questions of law." Doherty v. City of Maryville, 431 F. App'x 381, 385 (6th Cir. 2011); see, e.g., Belk, Inc. v. Meyer Corp., 679 F.3d 146, 160 (4th Cir. 2012) ("Unitherm does not

10

bar properly preserved claims of error that do not challenge the sufficiency of the evidence."); Linden v. CNH Am., LLC, 673 F.3d 829, 832-33 (8th Cir. 2012) (stating that "appeals courts have uniformly limited [Unitherm's holding] to sufficiency of the evidence challenges where parties fail to file a postverdict motion under Rule 50(b) after the denial of a Rule 50(a) preverdict motion"). These courts have also emphasized, however, that the renewal requirement is excused only for " 'pure' questions of law that are detached from the evidence, not within the domain of the jury, and only ever properly ruled upon by the judge." Belk, Inc., 679 F.3d at 161; see Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 188 (3d Cir. 2015) ("Cases in which the facts that could render an actor answerable for his conduct are disputed or in which questions exist as to what occurred simply do not fit."). In short, issues that have "a factual component" are not pure questions of law. Frank C. Pollara Grp., LLC, 784 F.3d at 187-88.

¶ 23. We have serious doubts whether the District raised in its motion for judgment as a matter of law a pure question of law unconnected to the facts that would qualify for this exception—even assuming it asserted this exception here, which it did not, and even if we adopted it, which we have not. In seeking judgment as a matter of law on plaintiff's negligent-supervision claim at the close of plaintiff's evidence, the District argued that Vermont statutory and common law "requires schools to protect students only from foreseeable risks, and only to the extent necessary to carry out their educational purpose." The District first argued that, as was the case in Stopford, plaintiff's assault was not foreseeable insofar as the school had no notice of a danger of the kind of harm plaintiff suffered, and by whom. This was the same argument that the District raised in its motion for summary judgment. As discussed above, the argument is heavily dependent on the particular facts of this case. Accordingly, it is unreviewable in the absence of a renewed motion under Rule 50(b), even assuming we were to adopt the federal exception to the Rule 50 renewal requirement for pure questions of law.[8]

---

[8] A component of the District's lack-of-foreseeability argument was that the school was not aware of which particular football team members potentially posed a risk of harm to other team

11

¶ 24. The District also argued, however, that the school had no duty to protect plaintiff in this case because plaintiff was assaulted by other students off-campus in a private home with no school personnel in attendance. Thus, in the District's view, the assault occurred outside its control and beyond its educational mandate. See Edson v. Barre Supervisory Union No. 61, 2007 VT 62, ¶ 11, 182 Vt. 157, 933 A.2d 200 (stating that a school's "duty of supervision is limited both by statute and by the common law, which requires schools to protect students only from foreseeable risks, and only to the extent necessary to carry out their educational purpose"). The District took the position that once a student leaves the school's "orbit of authority," the school's duty of supervision ends "because it's not necessary to carry out its educational purpose." Plaintiff responded to this argument by pointing out there was evidence that the school was aware of team dinners at private residences the evening before games and that there were supervision problems at those dinners.[9]

¶ 25. In denying the District's motion for judgment as a matter of law made at the close of plaintiff's evidence, the trial court cited disputed evidence as to whether at the time of plaintiff's assault the District was aware of the Peavy assault at a team dinner a year earlier. The court suggested that, given the general history of harassing behavior within the football team and the specific history of sexually assaultive behavior at a past team dinner, a factfinder could conclude that the school had a duty to prohibit unsupervised "team dinners" by threatening players with dismissal from the team if they attended such dinners.

---

members. Although we conclude that the District did not preserve this argument, we note that in Stopford we "recognized that a generalized risk can contribute to establishing foreseeability . . . when it is accompanied by some knowledge of specific, similar acts or incidents of harm." 2018 VT 120, ¶ 19. Thus, although Stopford stands for the proposition that a school must have some specific notice of a particular risk to be liable for a student-on-student assault, we did not suggest that a school could not be liable if it knew that students in a given situation in a particular setting posed a risk of harm to other students but did not know which particular students in that situation posed a risk of harm.

[9] Plaintiff testified that attendance at the team dinners, where some of the most offensive hazing took place, though not mandatory, was "suggested" for team players, and that he attended the dinners to be "a part of the team."

12

¶ 26.    We need not determine if the District's latter argument raised a pure question of law which would negate the requirement in Rule 50(b) that its motion for judgment as a matter of law be renewed following the jury verdict.  Assuming the argument can be considered a pure question of law, we decline to adopt, on our own motion, an exception to our general and oft-stated rule requiring parties to renew motions for judgment as a matter of law following a jury verdict. Importantly, there is a significant distinction between the federal and Vermont rule.  The federal rule does not include the key sentence by which the Vermont rule mandates post-verdict renewal of motions for judgment as a matter of law: "Renewal of the motion is necessary to appeal from denial of or a failure to grant a motion for judgment as a matter of law."  V.R.C.P. 50(b); see Reporter's Notes—1988 Amendment, V.R.C.P. Rule 50 (noting that Rule 50(b) was amended "to make explicit" requirement "that a motion for judgment notwithstanding the verdict 'is necessary' to appeal from the denial or the failure to grant a motion for a directed verdict").  This strong and unequivocal language in the rule militates against adopting exceptions, particularly when applying the exception—determining whether an argument poses a "pure" question of law—presents potential difficulties in line-drawing and thus risks swallowing the rule.[10]

## II.  Comparative Negligence

¶ 27.    Next, the District argues that the trial court erred by not reducing the jury's award of damages based on the jury's finding of comparative negligence and then by later increasing the damages award after granting plaintiff's post-trial motion to set aside the jury's finding of comparative negligence.

### A.  Setting Aside Jury's Finding of Comparative Negligence

¶ 28.    We first consider the District's argument that the trial court erred by setting aside the jury's finding of comparative negligence and granting plaintiff either a new trial or an additur.

---

[10]  We refer to the Civil Rules Committee consideration of whether Vermont Rule of Civil Procedure 50(b) should be amended to be consistent with the federal rule and potentially to allow consideration of pure questions of law on appeal absent renewal following judgment.

13

The District contends that: (1) plaintiff waived his post-trial challenge to the jury's finding of comparative negligence by failing to object to the trial court's comparative-negligence instruction; and (2) in any event, the evidence in this case warranted that instruction.

¶ 29.  As a threshold matter, we reject the District's argument that plaintiff waived his post-trial challenge to the jury's finding of comparative negligence by failing to object to the trial court's jury instruction on comparative negligence.  Rather than challenge specific aspects of the trial court's comparative-negligence instruction, plaintiff contested any inclusion of comparative negligence in the case, given the evidence presented at trial.  At the close of evidence, plaintiff moved for judgment as a matter of law on his opposition to the District's comparative-negligence defense, pursuant to Vermont Rule of Civil Procedure 50(a).  He then renewed that motion post-judgment in his motion for a new trial on damages or, in the alternative, an additur.  See V.R.C.P. 50(b) (providing that renewal of motion for judgment as matter of law may be joined with motion for new trial, and, if granted, trial court "may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law").  That was sufficient to preserve the issue for the trial court's post-trial consideration.

¶ 30.  As for the merits of the trial court's decision to set aside the jury's finding of comparative negligence, we agree with the trial court that it erred in sending the issue of comparative negligence to the jury in the first place because no reasonable jury could conclude, based on the evidence presented at trial, that plaintiff was contributorily negligent in attending the October 2012 dinner.  See Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 5, 182 Vt. 349, 940 A.2d 674 ("Rulings on motions for a new trial are within the discretion of the trial court."); In re Robinson/Keir P'ship, 154 Vt. 50, 54, 573 A.2d 1188, 1190 (1990) (stating that trial court "may reconsider issues previously before it, and generally may examine the correctness of the judgment" (quotation omitted)); see also V.R.C.P. 61 (providing that new trial is warranted if refusal to do so "appears to the court inconsistent with substantial justice").  The fact that plaintiff was aware of homophobic slurs made by some team members against other players in the past and

14

that he had recently been injured during a consensual boxing match with another player at an earlier team dinner did not make it reasonably foreseeable for him to know that he could be subjected to a sexual assault by teammates at a later team dinner.

¶ 31.   Nor can plaintiff's awareness of lax supervision at past team dinners make him contributorily negligent with respect to his sexual assault at the October 2012 team dinner.  The District finds irony in the fact that the trial court allowed the jury to determine that plaintiff's assault was reasonably foreseeable to the school but not plaintiff.  The salient difference, of course, is that the jury could have determined from the evidence presented at trial that the school was aware of a similar assault by team members at a past team dinner.  But no evidence suggested that plaintiff was aware of any previous similar assault by team members at team dinners or anywhere else.  The District's reliance on Tate v. Board of Education, Prince George's County, 843 A.2d 890 (Md. Ct. Spec. App. 2004), is entirely misplaced.  In that case, the sexual-assault victim deceived the school so that she could leave school grounds with the assailant, whom she knew wanted to have sex with her.  Id. at 898.  In this case, the evidence does not provide a sound basis for a reasonable jury to hold plaintiff partially responsible for being sexually assaulted at the October 2012 team dinner.  Accordingly, in granting plaintiff's post-trial motion to set aside the jury's comparative-negligence determination, the court corrected its error in instructing the jury on comparative negligence.

### B.  Jury Verdict on Damages

¶ 32.   The District also challenges the trial court's interpretation of the jury's award of damages.  In its comparative-negligence charge to the jury, the trial court instructed the jurors that if they determined that the school's negligence was a larger percentage of the harm than plaintiff's negligence, they "must go on to decide what damages [plaintiff] suffered."  In its damages charge, the court instructed the jurors that if they found plaintiff was injured as the result of the school's negligence, then they "must decide how much money to award him as damages."  The court also told the jurors, with regard to plaintiff's duty to minimize his damages, that if they found that

15

plaintiff "failed to take reasonable steps to minimize any damages he suffered, [they] must reduce [their] award of damages by the amount [they] find he could have avoided."

¶ 33. On the verdict form returned following the jury's deliberation, the jury indicated that the District was sixty percent negligent and plaintiff was forty percent negligent. In response to the question on the form asking—"What damages, if any, do you award Zac Blondin based upon negligence?—the jury indicated "$280,000" for pain and suffering. The parties disputed whether, in arriving at the $280,000 figure, the jurors had made the comparative-negligence calculation by deducting forty percent from the plaintiff's total damages. The court concluded that they had, reasoning that they were specifically asked what damages they were awarding "Zak Blondin based upon negligence," as opposed to being asked for the total damages resulting from both parties' negligence.

¶ 34. The District argues on appeal that neither the jury charge nor the verdict form explicitly instructed the jury to perform the comparative-negligence calculation and that, although it was the jury's role to determine the relative negligence of the parties, it was the court's role to reduce the jury's damage award based on that determination.

¶ 35. Notwithstanding the District's suggestion to the contrary, neither the comparative-negligence statute nor our case law indicates that it is exclusively the court's, rather than the jury's, role to make a comparative-negligence calculation when entering a judgment. Our comparative-negligence statute provides, in relevant part, only that "if the [plaintiff's] negligence was not greater than the causal total negligence of the defendant or defendants, . . . the damage shall be diminished by general verdict in proportion to the amount of negligence attributed to the plaintiff." 12 V.S.A. § 1036. Citing that statute, the case the District relies on states only that "[a]llocation of the respective percentages of causal negligence attributable to the plaintiff and defendant is generally a fact question for the jury, and plaintiff's recovery is automatically reduced according to the proportional amount of his or her causal negligence." Barber v. LaFromboise, 2006 VT 77, ¶ 7, 180 Vt. 150, 908 A.2d 436.

¶ 36. We conclude that, while the jury verdict form could have been clearer, given the trial court's instructions to the jury and the wording of the verdict form's interrogatory on damages, the trial court reasonably concluded that the jury made the comparative-negligence calculation in determining that plaintiff was entitled to an award of $280,000 for his pain and suffering connected to his negligent-supervision claim. Accordingly, we find no error in the trial court granting plaintiff an additur in the amount of $186,666, for a total judgment of $466,666. See Johnson v. UPS, 2006 VT 57, ¶ 10, 180 Vt. 513, 904 A.2d 1089 (mem.) ("[W]e will sustain a jury verdict when it can be justified on any reasonable view of the evidence. In doing so, we must presume that the jury has followed the trial court's instructions." (citation omitted)).

### III. Cross-Appeal

#### A. Admission of Excerpts from Plaintiff's School Disciplinary Records

¶ 37. In his first claim of error in his cross-appeal, plaintiff contends that the trial court erred by not granting him a new trial based on its admission of excerpts from his school disciplinary records. We find no reversible error, if any error at all.

¶ 38. When asked during direct examination how the assault had impacted him, plaintiff testified, "I was getting mean." When asked to explain what he meant by that and how he related it to what happened, plaintiff responded: "I was a pretty nice kid beforehand, yeah. I had some—in elementary school I had my fair share of trouble, but that wasn't who I was. I was a sweet kid." The District moved to admit plaintiff's school disciplinary records to counter this testimony, which could have impacted the jury's determination of damages. Plaintiff objected to admission of the records, citing Vermont Rule of Evidence 404(a), which prohibits the admission of character evidence to prove "action in conformity therewith on a particular occasion." The trial court admitted excerpts from the disciplinary records after examining and discussing with the parties' attorneys each of the records' entries.

¶ 39. After the jury rendered its verdict, plaintiff moved for a new trial, in relevant part, based on the trial court's alleged error in admitting excerpts from his school disciplinary records.

17

The trial court denied the motion, stating that it had admitted the challenged evidence to counter plaintiff's previous trial testimony that after the assault he changed from being a nice kid to a mean person. The court concluded that the evidence was admissible under Rule 404(b) for a purpose other than to prove he acted in conformity with that character trait—namely, to counter plaintiff's claim of his changed character following the assault that was the subject of plaintiff's lawsuit.

¶ 40. "The law favors upholding jury verdicts." Shahi v. Madden, 2008 VT 25, ¶ 14, 183 Vt. 320, 949 A.2d 1022. Hence, "[w]hether to grant a motion for a new trial is a question left to the sound discretion of the trial court," and we review the denial of a motion for a new trial "for abuse of discretion." Id.; see also State v. McAllister, 2018 VT 129, ¶ 21, 209 Vt. 60, 202 A.3d 989 (stating that although courts must be vigilant in admitting evidence of uncharged bad conduct, they are "afforded broad discretion" in determining "whether evidence is admissible, and thus this Court will only overturn a decision where we find an abuse of discretion resulting in prejudice" (quotation omitted)).

¶ 41. We find no abuse of discretion here, where the trial court denied plaintiff's motion for a new trial based on its determination that it had admitted excerpts from plaintiff's school disciplinary records to allow the District to counter plaintiff's testimony, in support of his claim of injury for which he sought damages, that the assault changed him from being a sweet kid to a mean person—and not to allow the District to show that plaintiff acted in conformity with the character traits recorded therein. See V.R.E. 404(b) (providing that evidence of other bad acts may be admissible for purposes other than proving person acted in conformity with those acts, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"); see also State v. Forbes, 161 Vt. 327, 332, 640 A.2d 13, 16 (1993) (stating that "Rule 404(b) allows evidence of uncharged conduct for any purpose" other than acting in conformity with bad character and that admissible purposes listed in Rule 404(b) are "not exclusive," as indicated by Rule's use of phrase "such as"); cf. Young v. Rabideau, 821 F.2d 373, 380 (7th Cir. 1987) (concluding that trial court did not abuse its discretion in allowing admission of plaintiff's prison

18

disciplinary records "as a valid evidentiary method of contradicting his explanations of his 'unintentional' actions").

¶ 42. By carefully going over each of the disciplinary entries before deciding which ones to admit, the trial court effectively weighed the probative value of each entry—with respect to countering plaintiff's testimony—against the potential unfair prejudice that might result from admission of the entry. See V.R.E. 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

¶ 43. In claiming unfair prejudice, plaintiff acknowledges that pre-assault instances of his mean behavior could be relevant to counter his testimony that he was a "sweet kid" before the assault, but he asserts that instances of such behavior in his disciplinary records occurring after the October 2012 assault have no relevance whatsoever. He points particularly to the trial court's admission of two post-assault instances of meanness contained in his school disciplinary records— one in which he called a student a "whore" and another in which he told a student in class that the student would have to have an IQ above ten to participate in conversations.

¶ 44. Neither of these two instances of alleged meanness admitted by the court, nor any others, convince us that plaintiff is entitled to a new trial. Plaintiff himself testified that he became mean after the assault. Moreover, both the principal and assistant principal testified that plaintiff had behavior issues both before and after the assault and that they did not notice any changes in his demeanor after the assault. Thus, evidence of the post-assault incidents in his school records was cumulative. Further, the fact that a high school student would say such things to other high school students is not so shocking that we will assume the jurors would reduce plaintiff's damages on that basis. In any event, even if we were to assume that the evidence played some role in the jury's comparative-negligence determination, as plaintiff contends, we have upheld the trial court's decision to strike that component of the jury's verdict.

## B. Plaintiff's Vermont Public Accommodations Act Claim

¶ 45. Next, plaintiff argues that the trial court erred by denying his motion for judgment as a matter of law on his VPAA claim and then instructing the jury that he was required to prove elements of that claim beyond what the statute required. For the reasons explained below, we find these arguments unavailing.

¶ 46. Before addressing the arguments, we summarize the history of the relevant law. The VPAA prohibits "a place of public accommodation" from withholding privileges or advantages from any person based on the person's "race, creed, color, national origin, marital status, sex, sexual orientation, or gender identity." 9 V.S.A. § 4502(a). The Act expressly includes "any school" within its definition of a "place of public accommodation." 9 V.S.A. § 4501(1).

¶ 47. In 2004, the Legislature enacted former 16 V.S.A. § 14, which set forth the procedures for addressing harassment claims in schools. 2003, No. 91 (Adj. Sess.). Declaring its intent to give educational institutions "the opportunity to remedy promptly and appropriately allegations of harassment," id. § 1(4), the Legislature required those institutions to conduct prompt investigations after "receiv[ing] actual notice of alleged conduct that may constitute harassment," with notice defined as "a written complaint or oral information . . . provided to [an institution's] designated employee." Id. § 3(a), (c)(3). Recognizing potential claims under the VPAA, the statute provided that: (1) educational institutions must take action to stop the harassment if, "after notice," the institution determines that the harassment occurred; and (2) the claimant may not bring a claim under the VPAA "until administrative remedies available to the claimant" under the educational institution's policies "have been exhausted," unless the claimant can demonstrate the applicability under the circumstances of one of the five specified exceptions to the exhaustion requirement. Id. § 3(b).

¶ 48. Based on this statutory language and the statute's definition of harassment, as well as the role schools play in protecting students, we held that "the VPAA encompasses hostile school environment claims based on peer harassment," but that a plaintiff bringing such a claim must show

20

that (1) the harassing conduct was "so severe, pervasive, and objectively offensive" as to deprive the plaintiff of the educational institution's benefits or opportunities; and (2) "the plaintiff exhausted the administrative remedies available, or that circumstances existed that relieved the plaintiff of the exhaustion requirement." Washington v. Pierce, 2005 VT 125, ¶¶ 18, 35, 179 Vt. 318, 895 A.2d 173.

¶ 49. In a 2010 case, we declined to consider the Human Rights Commission's unpreserved claim on appeal that the trial court erred by instructing the jury to determine whether the two students alleging peer-on-peer harassment were subjected to harassment so severe, pervasive, and objectively offensive as to deprive them of educational opportunities or benefits. Venturella v. Addison-Rutland Supervisory Union, 2010 VT 115, ¶¶ 1-3, 189 Vt. 553, 12 A.3d 558 (mem.). Seventeen months later, the Legislature amended former 16 V.S.A. § 14, now 16 V.S.A. § 570f, primarily by adding a section providing that, to prevail in an unlawful-harassment action brought under that statute and the VPAA, the plaintiff must prove both that: (1) the student was subjected to unwelcome conduct based on the student's perceived membership in one of the categories protected by the VPAA; and (2) the conduct was either for multiple instances of conduct so pervasive, or for a single instance of conduct so severe, that it adversely affected the student's equal access to educational opportunities. 2011, No. 140 (Adj. Sess.), § 1(c); see 16 V.S.A. § 570f(c).

¶ 50. As plaintiff acknowledges, his arguments that the trial court erred in denying his motion for judgment as a matter of law on the VPAA claim, and that the court committed plain error in instructing the jury on that claim, are intertwined. Plaintiff argues that, pursuant to the 2012 amendment to the harassment statute, he was required to prove only two elements: (1) that he was subject to unwelcome conduct based on his actual or perceived sex or sexual orientation; and (2) that viewed from an objective standard, the October 2012 assault would substantially and adversely affect his access to educational opportunities or benefits. See 16 V.S.A. § 570f(c). According to plaintiff, even viewing the evidence most favorably to the District and excluding the

21

effect of modifying evidence, no reasonable jury could conclude that he failed to satisfy these two elements by a preponderance of the evidence. See Gero v. J.W.J. Realty, 171 Vt. 57, 59, 757 A.2d 475, 476 (2000) ("We review judgment as a matter of law under the same standard as the trial court: the evidence is viewed in the light most favorable to the nonmoving party, and we exclude the effects of any modifying evidence.").

¶ 51. In plaintiff's view, because the 2012 amendment to the VPAA required him to prove only the two elements now set forth in § 570f(c) to prevail on his VPAA claim, the trial court committed plain error by instructing the jury that plaintiff had to prove anything more than those two elements. To that point, plaintiff argues that he was not required to prove at trial exhaustion of administrative remedies; rather, in his view, that was a matter for the court to decide pursuant to a motion to dismiss or for summary judgment. By the same token, plaintiff argues that the court committed plain error by requiring him to prove that Milton High School failed to take prompt and appropriate remedial action after learning of his assault. Plaintiff asserts that the harassment statute makes it a school's duty to promptly investigate reports of harassment and does not require a plaintiff to prove that the school failed to take such action. Finally, without identifying any specific language, plaintiff also argues that the court committed plain error by instructing the jury in its charge on damages to evaluate his alleged injuries under what he views as a subjective standard rather than the objective standard set forth in the statute.

¶ 52. As an initial matter, we conclude that most of these arguments are either precluded by the invited-error doctrine or fail due to a lack of prejudice. Under the "invited error doctrine," a "branch of the doctrine of waiver" that applies in both civil and criminal cases, a party cannot "induc[e] an erroneous ruling and later seek[ ] to profit from the legal consequences of having the ruling set aside." State v. Morse, 2019 VT 58, ¶ 7, ___ Vt. ___, 219 A.3d 1309 (quotation omitted). "The invited error doctrine prevents [parties] from essentially having veto power over the proceedings by eliminating their right to challenge an invited error and request a new trial if the original trial does not result in a ruling favorable to them." Id.

¶ 53.     In his requests to charge submitted to the court before trial, plaintiff asked the court to instruct the jury that, regarding his VPAA claim, he must prove the following elements by a preponderance of the evidence: (1) he was subject to physical conduct based on his actual or perceived sex; (2) the conduct was so severe as to substantially and adversely affect his access to educational opportunities or benefits; (3) Milton High School failed to take appropriate remedial action after receiving oral information of plaintiff's assault; and (4) he satisfied at least one of the five exceptions to the statutory exhaustion requirement.

¶ 54.     At the close of plaintiff's case, the District moved for judgment as a matter of law on both counts.  Regarding plaintiff's VPAA claim, the parties debated whether plaintiff had made any showing that he was a member of a protected class and whether he had exhausted his administrative remedies or demonstrated that one of the exhaustion exceptions applied.  Plaintiff argued that he was assaulted because of his gender, while the District argued that he was assaulted because he was a football team member, not because he was a member of a protected class.[11]  Following a lengthy discussion on those issues, the trial court denied the District's motion, stating that the issues of whether plaintiff was a member of a protected class and whether he met one of the exceptions to the exhaustion requirement would go to the jury.

¶ 55.     The next day at the charge conference after the close of evidence, plaintiff suggested that the trial court should determine as a matter of law, even if it involved addressing disputed facts, the question of whether plaintiff was required to exhaust his administrative remedies.  The trial court ruled that plaintiff failed to raise this question in a timely manner in response to the District's motion for summary judgment.  Plaintiff's only other objection to the court's proposed instruction on his VPAA claim was that the court should omit the last five words of the following VPAA element: "That the school received a report about the harassment but did not take prompt and

_____

[11] Plaintiff initially argued that he was claiming he was assaulted based on his gender, but he later backtracked from that assertion, stating at the charge conference the next day that gender and sexual orientation went "hand-in-hand" in this case and that it "was up to the jury to decide."

23

appropriate remedial action <u>calculated to stop the harassment</u>." (Emphasis added.) The court denied the objection, noting that the challenged language was in the statute. With respect to the jury verdict form, plaintiff agreed to a minor change in the wording of the question on exhaustion, but he did not otherwise object to the questions on the form.

¶ 56. On the verdict form, the jury indicated "yes" to the question whether plaintiff had a legitimate basis for not exhausting his administrative remedies and "no" to the questions whether the school violated the VPAA and whether plaintiff suffered any damages as a result of the school's violation of the VPAA.

¶ 57. In his motion for judgment as a matter of law, or in the alternative a new trial, plaintiff acknowledged that he had to prove that he was subject to physical conduct because of his actual or perceived sex, that the conduct was so severe as to affect his access to educational opportunities and benefits, that the school failed to timely investigate the assault, and that at least one of the exhaustion exceptions applied in this case.[12]

¶ 58. In light of this history, plaintiff waived, and in any event was not prejudiced by, any perceived error he attributes to the trial court's instruction on exhaustion of administrative remedies. Plaintiff invited any such error, and, in any case, the jury determined that plaintiff had a legitimate basis under the law for not exhausting his administrative remedies.

¶ 59. Further, plaintiff invited any perceived error in the court instructing the jury on his need to prove that the District failed to timely respond to a report of harassment. Plaintiff repeatedly acknowledged that this was an element he needed to prove with respect to his VPAA claim. Plaintiff's only objection to the charge on that claim was the court's refusal to omit the last five words in its instruction on that element—"calculated to stop the harassment." Plaintiff does not

---

[12] We note that the grounds for a renewed motion for judgment as a matter of law "are limited to those [grounds] specifically raised in the prior motion." Foti Fuels, Inc. v. Kurrle Corp., 2013 VT 111, ¶ 12, 195 Vt. 524, 90 A.3d 885 (quotation omitted); see Reporter's Notes—2009 Amendment, V.R.C.P. 50 ("Because the post-judgment motion is merely a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the prior motion.").

claim any error on that point on appeal—and we find no error. As the trial court indicated, that phrase is part of the statutory language. See 16 V.S.A. § 570f(a)(2) ("If, after notice, the educational institution finds that the alleged conduct occurred and that it constitutes harassment, the educational institution shall take prompt and appropriate action reasonably calculated to stop the harassment."). Nor do we find merit in plaintiff's claim that the trial court committed plain error in instructing the jury on damages with respect to his VPAA claim, given the jury's determination that the school did not violate the VPAA.

¶ 60. Regarding plaintiff's request for judgment as a matter of law on whether he was a member of protected class, we conclude that the trial court did not err in denying that request.[13] Viewing the evidence most favorably to the District, and excluding modifying evidence, a reasonable juror could conclude that plaintiff was not assaulted based on his gender or perceived sexual orientation. There was no direct evidence that plaintiff was assaulted on either of those bases. Nor was there any evidence of homophobic comments directed at plaintiff before the assault. Plaintiff testified that, immediately after the assault, one of the assaulting team members said to him, "[w]elcome to the team," suggesting that the assault was part of an initiation to the team. Plaintiff's references to a past culture of homophobia on the football team are too attenuated to entitle him to judgment as a matter of law on whether he was assaulted based on his gender or perceived sexual orientation.

C. Punitive Damages

¶ 61. Finally, plaintiff argues in his cross-appeal that the trial court erred by refusing to instruct the jury on punitive damages. The trial court declined plaintiff's request, relying on this Court's decision in Town Highway No. 20, 2012 VT 17, ¶ 67, where we held that, "absent a clear

---

[13] The jury verdict form did not break down the elements of the VPAA claim, but rather asked only whether the school had violated the VPAA, to which the jury indicated, "no." At the charge conference, plaintiff did not ask the court to separate the elements of the claim on the form. Therefore, it is impossible to tell which of the elements the jury determined that plaintiff had failed to prove.

legislative directive to the contrary, municipalities are immune from punitive damage awards." We agree and reject plaintiff's attempt to distinguish our holding in Town Highway.

¶ 62.   In Town Highway, the plaintiff argued that the trial court erred by denying his claim for punitive damages against the defendant town despite finding that members of the town selectboard acted in bad faith and with malice towards him.  Noting that punitive damages are aimed at punishing and deterring the wrongdoer, not rewarding the injured, id. ¶ 67, we concluded that those aims "would not be met if they were levied against a municipal corporation for the malicious and wrongful acts of its officers" because the individual town officials would not face any direct financial hardship, and only the town's taxpayers would be punished, id. ¶¶ 69-70.  We noted that the overwhelming majority of jurisdictions had concluded that municipal corporations cannot be held liable for punitive damages "[b]ecause the twin aims of punishment and deterrence are not served when punitive damages are levied against a population for the acts of its elected officials." Id. ¶ 72; see 18 E McQuillan, The Law of Municipal Corporations § 53:55 (3d ed. August 2020 update) ("In the overwhelming majority of jurisdictions which have considered the question, it is now firmly established that . . . punitive damages are not recoverable [against a municipal corporation] unless expressly authorized by statute or through statutory construction.").

¶ 63.   In attempting to distinguish Town Highway, plaintiff first argues that the District is not a municipality.  We disagree.  Schools and school districts are municipal entities supported by taxpayers.  See 1 V.S.A. § 126 (" 'Municipality' " shall include a city, town, town school district, incorporated school or fire district or incorporated village, and all other governmental incorporated units."); see also Baird v. Town of Berlin, 126 Vt. 348, 352, 231 A.2d 110, 113 (1967) ("The School district is a municipality, 1 V.S.A. § 126, and is a separate corporate entity from the town.").

¶ 64.   With respect to his VPAA claim, plaintiff further argues that the harassment statute, considered together with the VPAA, demonstrates a "clear legislative intent" to allow punitive damages against school districts for harassment claims.  See 9 V.S.A. § 4506(a) (providing that person aggrieved by violation of VPAA may seek in superior court "injunctive relief and

compensatory and punitive damages and any other appropriate relief"); 16 V.S.A. § 570f(c) (setting forth elements of harassment necessary to prevail in action under VPAA). Again, we disagree. Notably, the VPAA applies to both private and public entities. The fact that the Legislature recognized, in enacting the 2004 law concerning harassment in education institutions, that harassment claims could be brought under the VPAA does not show "clear legislative intent" to allow punitive damages when litigants prevail in such actions against public educational institutions, as opposed to private entities.

¶ 65. With respect to his negligent supervision claim, plaintiff argues that Town Highway is distinguishable because: (1) the holding in Town Highway should be considered in the unique context of a Common Benefits Clause action in which politically motivated litigants could seek to change government policies through a lawsuit rather than representative politics; and (2) the negligent school officials in this case, unlike the town officials in Town Highway, are not elected and thus cannot be removed from office by town voters. Plaintiff reads our holding in Town Highway too narrowly. The heart of that holding is that punitive damages are not available against municipalities because it would not further the goals of deterring and punishing the wrongdoers. That rationale applies equally here. See McQuillan, supra, § 53:55 ("The idea is that we can assume that public officials will do their duty, and if discipline of a wrongdoing municipal employee is needed, appropriate measures are available through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts."). School employees ultimately are answerable to a school board, whose members are elected.

Affirmed.

FOR THE COURT:

_____

Associate Justice

27